COMMONWEALTH *VS.* BERNARD MEADOWS.

No. 91-P-528.

Suffolk. September 14, 1992. - November 10, 1992.

Present: KASS, SMITH, & PORADA, JJ.

*Practice, Criminal,* Comment by judge, Questioning of witness by judge.
*Judge. Evidence,* Cross-examination, Identification, Corroborative
evidence.

A judge's manifestations of displeasure directed toward defense counsel
during the course of a criminal trial did not result in unfairness to the
defendant. [534-539]
In the context of defense counsel's cross-examination of a witness at a
criminal trial, the judge properly intervened to focus a question that
was not clear to him. [539-540]
At a robbery trial, the judge acted within his discretion in limiting the
extent and length of cross-examination of the victim. [540]
At a robbery trial, a police officer's testimony concerning the victim's ex-
trajudicial identification of the defendant was admissible to corroborate
his in-court identification, and no substantial risk of a miscarriage of
justice arose from variations in these witnesses' testimony as to the de-
gree of certainty. [540-541]

INDICTMENT found and returned in the Superior Court De-
partment on October 10, 1989.

The case was tried before *Elbert Tuttle,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Ser-
vices (*Debra Shopteese,* Committee for Public Counsel Ser-
vices, with her) for the defendant.

*Roger L. Michel, Jr.,* Assistant District Attorney, for the
Commonwealth.

KASS, J. During the trial of Bernard Meadows for armed
robbery, the trial judge on several occasions rebuked or cor-
rected defense counsel. Those expressions of displeasure, the
defendant claims on appeal, deprived him of a fair trial. Ad-
ditional claims of error are that: the judge asked a question

of a witness in a manner which suggested that the judge thought the defendant guilty; the judge prematurely cut off a line of cross-examination; and the judge erroneously permitted the introduction in evidence through a police officer of an out-of-court identification of the defendant by the principal prosecution witness, the victim of the robbery. We affirm.

Considering the evidence in the light most favorable to the government, the jury could have found that on August 26, 1989, Clifford Byrd, while walking his puppy, was confronted by a man who told him it was a "stick up," that he (the robber) had a gun, and that Byrd better give him everything he had. Byrd saw what looked like a cylinder pointed at his abdomen and emptied his pockets of a five-dollar bill and ten cents. The robber bent down to pick up the money and warned Byrd to "keep walking."

Byrd walked to the nearest police station, where he picked two photographs of the defendant out of mug shot books, rating the certainty of his photo-identification as seven on a scale of one to ten. The next day, Byrd saw a man he was sure was the robber, wearing the same red jacket he had worn at the holdup. On the one-to-ten scale, Byrd rated the certainty of his identification that day as a ten. On September 5, 1989, ten days after the holdup, Byrd, who was in his car, spotted the stick-up man standing at the intersection of Erie and Ellerton streets in Dorchester. Byrd drove home and from there called his sighting and a description of the man into the police. They arrested the defendant forty minutes later. At a probable cause hearing in Dorchester District Court on September 15, 1989, Byrd identified the defendant as the man who had robbed him.

1. *Judge's criticism of defense counsel.* Under the rubric of unfair criticism of defense counsel by the judge, we consider five manifestations of judicial displeasure, leaving two others for later discussion.[1]

(i) On the first day of trial, the judge, after the jury had left the courtroom for the lunch recess, told defense counsel

[1]Trial counsel is not the same lawyer as the one who briefed and argued the appeal.

that he hoped that counsel, upon resuming her cross-examination of Byrd, would not continue to compare his testimony at a probable cause hearing with his testimony at trial, unless there were inconsistencies between the two. That was an appropriate comment on a line of questioning that had employed the transcript of the probable cause hearing to dwell on differences, but not inconsistencies, between what the witnesses said then and later at trial. See *Commonwealth v. Haley*, 363 Mass. 513, 518-519 (1973) (it is the duty of the judge to direct and control trial proceedings); Lummus, The Trial Judge 19-21 (1937).

(ii) Later that day — with the jury present — the judge directed defense counsel, in a snappish manner, "Now look, you are going to read the transcript of the question and the answer. You read out of the transcript the question the lawyer asked him and the answer . . . [intervening statement by counsel] . . . Now, look, I'm telling you what you're going to do. Now you read the question and the answer." Six pages later in the transcript, the judge told defense counsel, "Please. Now I am telling you, you are not going to do it; and I am telling you what to do." Both remarks bore on a subject as to which the judge had earlier offered guidance in more modulated fashion. In the circumstances, the judge's remarks were "a show of evanescent irritation — a modicum of quick temper that must be allowed even judges." *Offutt* v. *United States*, 348 U.S. 11, 17 (1954). Contrast *Commonwealth* v. *Sylvester*, 388 Mass. 749, 750-752 (1983); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 16-17 (1980).

(iii) On an occasion the next day, while defense counsel was cross-examining another government witness, the judge interjected: "You know, [counsel], I hope you are going to show the relevance of this very shortly. This is an armed robbery with an identification problem, [counsel]. At least that's what you've told me." A page later in the transcript there is a remark of similar tenor. In neither instance had the prosecutor objected to the question, and the point argued is that it was improper for the judge to intervene, particularly in front of the jury. So far as possible, a judge should not dress down

counsel before the jury, *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847 (1980), but when examination of witnesses veers off the point, it is not unreasonable for a trial judge to rein in counsel. See *Commonwealth* v. *Haley*, 363 Mass. at 519.

(iv) Toward the end of the second day of trial, the judge admonished defense counsel severely for introducing (through the defendant's fiancée) alibi evidence without prior notice to the prosecution, contrary, apparently, to agreement memorialized in a pretrial conference report.[2] See Mass.R.Crim.P. 11, 378 Mass. 862 (1979), and see also Mass.R.Crim.P. 14(b)(1), 378 Mass. 876 (1979). No doubt the reprimand, which was made with the jury *not* in the courtroom, was unsettling, but it was warranted and, above all, the judge denied a government motion to strike the testimony of the witness who gave the alibi evidence. In terms of what the jury heard, the defense emerged from the situation unwounded.

(v) By the end of trial the attitudes of defense counsel and the judge toward one another were distinctly brittle. Defense counsel told the judge that he had been unfair to her and had reprimanded her within the hearing of the jury. The judge said defense counsel had been impolite and had not played by the rules. The most pronounced expression of judicial ire concerned what the judge considered the smuggling in of alibi defense. That discussion occurred with the jury outside the courtroom, but defense counsel thought the jury was just behind the door and could hear. The judge summoned court officers and held a hearing about whether his conversation with defense counsel had been audible. The testimony was that it could be heard in the courtroom but not outside the courtroom, and the judge so decided. During the postcharge sidebar conference, at which counsel were to ask for additions or corrections to the instructions given to the jury (see Mass.R.Crim.P. 24[b], 378 Mass. 895 [1979]), there was another eruption. The judge had made an ascerbic remark, '

---

[2]We so infer from colloquy between the judge and counsel. The report itself is not in the record.

"This is going to be the law according to [defense counsel]" and counsel responded: "[T]hat's the kind of stuff that I feel that you have been unfair with me, in making comments like that. You have done that throughout this trial." The judge began to respond, and counsel interrupted, saying, "And now you are pointing at me and the jury is still in this room." The temperature rose. The judge said, not unreasonably, "When I talk, you stop. Do you understand that?" Counsel responded, "And now I think they can hear you." Whereupon the judge asked the jury be taken from the courtroom. While, as we have observed, it is preferable for a judge not to discipline a lawyer in the presence of the jury, we do not think courtroom exchanges can be so sanitized as to eradicate even controlled irritation. That, on our reading of the transcript, is how we would characterize the judge's comments and reaction. The judge, when made aware that the charged atmosphere might reach the jury box, did remove the jury from the courtroom. He then continued the discussion at some length with counsel, listened to her, responded to her requests for amendments to his instructions, and, upon the conclusion of his supplementary instructions to the jury (they having returned to the courtroom), addressed the jurors as follows:

> "One other thing I want to tell you. During the course of this trial, I may have made comments to counsel. I may have interrogated witnesses. I may have done any number of things. If there was anything in my voice inflection or in my manner or in my questioning or in any way whatsoever that makes you think I have formulated an opinion relative to the issues involved in this case, I apologize to you for it. I ask that you disregard it.

> "You are to make your determination of whether this defendant is guilty or not guilty uninfluenced by me in any way whatsoever."

That firm instruction is the last thing the jury heard before retiring and is likely to have gone a long way in neutralizing any impression that might have been conveyed that the judge

thought ill of the defendant. See *Commonwealth* v. *Haley*, 363 Mass. at 522. We assume that jurors will follow the instructions given by the judge. *Commonwealth* v. *Foster*, 411 Mass. 762, 766 (1992). *Commonwealth* v. *Edgerly*, 6 Mass. App. Ct. 241, 260 (1978).

In none of the exchanges between counsel and the judge did the judge become an advocate for the prosecution, contrast *Commonwealth* v. *Sneed*, 376 Mass. 867, 869-871 (1978), or otherwise suggest a view that the defendant ought to be found guilty.

2. *Suggestive question.* When she was cross-examining Byrd, the robbery victim, defense counsel asked a question the judge did not understand and counsel reframed the question as follows: "On a separate occasion, you saw the person that you picked out in the photographs, right?" The judge did not understand that question either and an exchange between the judge and the witness ensued:

> THE COURT: "I still don't understand the question. He's testified that he saw him the day afterwards, and then he saw him on another occasion after that. Is that correct, sir?"
>
> THE WITNESS: "That is correct, your Honor."
>
> THE COURT: "All right. Those two times, plus the time that you say that you were robbed, were the only three times that you saw him prior to the hearing in court, right?"
>
> THE WITNESS: "That is correct, your Honor."

The defense argues on appeal that by, thus, summarizing Byrd's testimony, the judge gave it a judicial imprimatur of credibility and, further, that the judge undercut a line of cross-examination intended to show that Byrd had matched Meadows with the pictures he had seen, rather than with the man who had robbed him. We think those arguments somewhat overwrought. Nothing in the context of the judge's in-

tervention or anything the judge said suggests adoption of the testimony of the witness. Prior to that intervention the witness had manifested some confusion about questions he was being asked. It was permissible in the circumstances for the judge to be something more than a figurehead who is "dignified, imposing, mysterious and strictly ornamental."[3] See *Commonwealth v. Campbell*, 371 Mass. 40, 45 (1976); *Commonwealth v. Flaherty*, 1 Mass. App. Ct. 282, 289 (1973). The judge attempted to focus the cross-examination and defense counsel was permitted to resume cross questioning. We do not think there was error.

3. *Limits on cross-examination.* Defense counsel examined with persistence variations in declarations of certainty by Byrd on the one-to-ten scale about his identifications. That cross-examination revealed faulty memory about his degree of certainty on different occasions (at the police station, at the probable cause hearing, at trial). On appeal, the defendant complains that the judge improperly cut off cross-examination on this subject but the judge, here, did no more than exercise his wide discretion to limit the extent and length of cross-examination. *Commonwealth v. Carroll*, 360 Mass. 580, 589 (1971). *Commonwealth v. Dominico*, 1 Mass. App. Ct. 693, 714-715 (1974). Counsel had already mined the same vein for some time. To the extent there was an edge to the manner in which the judge terminated the scale-of-certainty line of inquiry, that was because of counsel's unwillingness to be guided by gentler requests to move to a different subject. Again, there was no error.

4. *Police officer's testimony about the certainty of Byrd's photographic identification.* Without objection, a Boston police officer, Paul J. Crossen, was allowed to testify that when Byrd identified two photographs from mug shot books, he, Crossen, made a note that Byrd had rated his certainty as a possible ten on the one-to-ten scale. At trial, Byrd had testified to a possible seven about his initial photographic identification. The defense argues that Officer Crossen's shoring up

[3]Pound, The Judicial Office in America, 10 B.U.L.Rev. 125, 127 (Apr. 1930), cited in Lummus, The Trial Judge, 19-21 (1937).

of Byrd's photographic identification offended the principle discussed in *Commonwealth* v. *Daye*, 393 Mass. 55, 60-63 (1984), namely that testimony by someone who observed an extrajudicial identification ought not to be received when the very person said to have made such an identification gives materially different testimony at trial. So, for example, had Byrd at trial denied making any photographic identification at the police station, Officer Crossen could not for probative purposes have testified that in fact he had, although the officer's testimony could have been received solely to impeach. The reasons for the rule are amply discussed in the *Daye* decision and need not be restated.

An extrajudicial identification which corroborates the in-court identification may, however, be received. *Commonwealth* v. *Repoza*, 382 Mass. 119, 130 (1980). *Commonwealth* v. *Daye*, 393 Mass. at 60-61. Here there is some variation as to the degree of certainty. At trial, however, Byrd attempted to say he was certain and the degree of certainty he attributed to "seven" became a subject of considerable cross-examination. We are of opinion that the variation was not a material one in the sense of the standard set out in *Daye.* Compare *Commonwealth* v. *Bassett*, 21 Mass. App. Ct. 713, 719-720 (1986). Byrd's testimony was consistent that he recognized his assailant in the two photographs and in the street identifications that he made thereafter. Certainly nothing said by Officer Crossen so altered the state of the evidence as to produce a serious risk of a miscarriage of justice.

*Judgment affirmed.*