CITY OF BOSTON & others[1] vs. UNITED STATES GYPSUM
COMPANY & another.[2]

No. 92-P-490.

Suffolk. December 9, 1993. - September 6, 1994.

Present: BROWN, FINE, & IRELAND, JJ.

*Practice, Civil*, Comment by judge, Instructions to jury. *Judge. Evidence*,
Relevancy and materiality, Cumulative, Competency, Safety improve-
ments. *Negligence*, Manufacturer, Standard of care, Duty to warn.
*Warranty. Sale*, Warranty.

This court concluded that, in the context of the lengthy civil proceedings,
there was not a sufficient basis to support the plaintiffs' claim that the
trial judge's comments during trial prejudiced the jury and deprived
them of a fair and impartial trial. [256-260]

The judge at the trial of a civil action committed no error requiring rever-
sal in his evidentiary rulings that resulted in the striking of certain doc-
uments and restricting the scope of the plaintiffs' expert testimony.
[260-261]

At the trial of an action seeking recovery of sums expended by a city to
remove construction materials containing certain asbestos products
manufactured by the defendants and installed in various public build-
ings throughout the city, the judge did not err in his instructions to the
jury on implied warranty, duty of care, and the defendants' postsale
duty to warn. [261-264]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 27, 1986.

The case was tried before *John L. Murphy, Jr.*, J.

*Steven P. Perlmutter* for the plaintiffs.

*Joseph P. Musacchio (Richard P. Melick* with him) for
United States Mineral Products Company.

*James D. Pagliaro*, of Pennsylvania (*Robert D. Friedman*
with him) for United States Gypsum Company.

---

[1]The School Committee of Boston and the collector-treasurer of Boston.
[2]United States Mineral Products Company.

BROWN, J. This is an action by the city of Boston and others to recover millions of dollars expended to maintain and ultimately to remove construction materials containing certain asbestos products manufactured by the defendants and installed in various public buildings throughout the city. The case proceeded to trial in three phases.[3] The instant appeal pertains to the manufacturers of surface treatment products, the so-called phase I. Four and one-half years after the initial complaint was filed, the phase I trial began in October, 1990. When the case went to the jury, only two of fifty-five original defendants remained, United States Gypsum Company (USG) and United States Mineral Products Company (USM).[4] The city based USG's liability on breach of implied warranty of merchantability and negligence; USM's liability was based on negligence, breach of express warranty, breach of implied warranty of merchantability, and nuisance.

The trial consumed forty-five days and produced a transcript in excess of 10,000 pages. The city offered thirty-eight witnesses and introduced hundreds of exhibits, which comprise almost 2,000 of the 14,000 pages in the record appendix. After allowing USM's motion for directed verdicts on the city's express warranty and nuisance claims, the case against both USG and USM went to the jury on the issues of product identification, liability, and damages.

Following a day and a half of deliberation, the jury found, in the form of answers to special questions, in favor of USG on the threshold issue of product identification with respect to all the city's buildings except the Egleston Square Branch Library Building (Egleston Square), and in favor of USG on

---

[3]Phases II and III, involving manufacturers of pipe and boiler insulation and floor tiles, respectively, either have been settled or dismissed.

[4]The city alleged that USG's acoustical ceiling materials were installed in four city buildings (Egleston Square Branch Library, Charles Taylor School, West End Branch Library, and North End Branch Library) and that these products contained asbestos, rendering them unreasonably dangerous for use. With respect to USM, the city alleged that its asbestos-containing products were installed in City Hall and the Boston City Hospital Administration Building.

the issue of liability with respect to Egleston Square.[5] The jury, after determining that USM's product had been installed in City Hall but not in the Boston City Hospital Administration Building, found in favor of USM on all claims of liability.[6]

The city presses a number of issues on appeal: (1) that the judge demonstrated bias against the city by making prejudicial comments, striking documents, and restricting the scope of the city's expert testimony and (2) that the judge committed several errors in his jury instructions on the defendants' postsale duty to warn, breach of implied warranty of merchantability, and other issues.

After careful review of the transcript, exhibits, and other material comprising this voluminous record, we conclude that no error was committed as would cause us to reverse the judgment entered below.[7] Before we address the merits of each issue, a short preface is imperative. It cannot be gainsaid that "[t]rial judges should refrain as far as reasonably possible from making critical comments before the jury." *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847 (1980). The patience, skill, and temperament exemplified by trial judges like Justices Francis J. Quirico and Henry T. Lummus were conspicuously absent here.[8] With that said, we now can confidently say that the city's ship sank not by the judge's torpedo but from the lack of sufficient evidentiary proof to keep it afloat.

---

[5]This appeal challenges the verdict in favor of USG on liability in Egleston Square; it does not contest the verdicts as to product identification.

[6]As with USG, the city contests only the jury verdict on the issue of liability arising out of the installation of its product in City Hall.

[7]While we decide this aspect of the case on the merits, we note that there is a question whether many of the city's claims of error have been adequately preserved for appellate review. See Mass.R.Civ.P. 46, 365 Mass. 811 (1974). The absence of a request for a mistrial or of a clear challenge to the totality of the judge's conduct or comments might also indicate that the comments were not perceived to be significantly prejudicial when they were made. See in this regard *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846, 848 (1980).

[8]See in this regard Lummus, The Trial Judge (1937).

1. *Allegations of bias of trial judge.* As is evident from the number of exhibits, witnesses, and days of trial, this was a mammoth case.[9] The trial judge managed the case for four and a half years, supervising an extensive discovery schedule and ruling on scores of motions. The city complains primarily that the trial judge's comments during trial prejudiced the jury and deprived it of a fair and unbiased trial. In making this argument, the city painstakingly cites numerous comments made by the judge during the course of the trial.[10]

Appropriate participation by the trial judge is crucial to ensuring a fair trial for both parties. " '[A] first-rate trial judge will find and tread the narrow path that lies between meddlesomeness on the one hand and ineffectiveness and impotence on the other.' " *Commonwealth* v. *Haley*, 363 Mass. 513, 519 (1973), quoting from Lummus, The Trial Judge 19-21 (1937). See also *Adoption of Seth*, 29 Mass. App. Ct. 343, 350 (1990). A close reading of the transcript in the instant case does not demonstrate that the judge impermissibly "played a partisan or overzealous role or expressed his opinion on the facts." *Commonwealth* v. *Benoit*, 389 Mass. 411, 423 (1983).

The comments cited by the city as evidence of bias fall into essentially two categories. First, there are comments that were made out of the presence of the jury, either at sidebar, during a bench conference, or during posttrial hear-

---

[9] The size of the record appendix (twenty-nine volumes) and supplemental appendix (five volumes) merits comment. While we recognize that an appeal based on judicial bias typically requires a review of the record in toto, we question whether the appendix in the instant case includes extraneous material. Mass.R.A.P. 18(b), par. 2, as amended, 378 Mass. 941 (1979). Indeed, this case invites comparison with a series of cases in the First Circuit that have attempted to discourage by way of assessing double costs the filing of unnecessarily lengthy briefs. See *In re M.S.V., Inc.*, 892 F.2d 5 (1st Cir. 1989), and cases cited.

[10] The city's brief and reply brief, together with its postargument correspondence, allege several hundred examples of allegedly biased comments and rulings made by the judge during the course of the trial. We reprint selections of the transcript in an effort to provide some guidance as to what might be construed as evidence of bias. See *Gauntlett* v. *Medical Parameters, Inc.*, 10 Mass. App. Ct. 88, 90 n.2 (1980).

ings. These range from the merely innocuous[11] to the arguably tactless.[12] The city argues that we should infer from such comments not only that the judge was in fact biased but that he would not hesitate to make such comments in front of the jury. This theory not only would obviate the need for sidebar and bench conferences but misperceives the basis for the appeal, i.e., that the judge's behavior prejudiced the jury. More to the point, the city presents an endless recitation of judicial comment that constitutes, at best, "a show of evanescent irritation — a modicum of quick temper that must be allowed even judges." *Commonwealth* v. *Meadows*, 33 Mass. App. Ct. 534, 536 (1992), quoting from *Offutt* v. *United States*, 348 U.S. 11, 17 (1954). Ultimately, no fatal prejudice could have resulted from such comments since they were made outside the presence of the jury. See *Commonwealth* v. *Benoit*, 389 Mass. at 423; *Commonwealth* v. *Cresta*, 3 Mass. App. Ct. 560, 564 (1975).

Second, the city cites a number of comments made before the jury by the trial judge that it claims manifests a prejudicial bias against it. For example, during the testimony of the city's expert Victor Hagan, the judge repeatedly used the phrase "off the top of [his] head" in his references to what

---

[11]The city claims that the judge manifested his bias by unfairly criticizing the city's attorneys who were from New York. This argument is without merit. Each comment cited by the city can be read simply as a reminder to counsel to rely on Massachusetts case law.

[12]In a colloquy pertaining to the jury taking a view of City Hall, the judge and counsel for both sides discussed the parameters of the tour.

> THE COURT: "I assume that we're going to look at the things that are of some relevance to the trial. *The mayor's office isn't involved here. I know everybody would like to see the mayor's office — it's always vacant, anyway* . . . ."
>
> THE CITY: "I have to give notice to [City Hall] that there will be a jury coming through."
>
> THE COURT: "No; you don't, really."
>
> THE CITY: "Well, my client would like to know, so they can provide somebody as a tour guide —"
>
> THE COURT: "You don't have to give notice. *I've been through City Hall before, and the only problem was people standing around in the corridors, smoking cigarettes*" (emphasis supplied).

the witness was relying on as his basis of damages for asbestos removal costs.[13] The city asserts that the use of this phrase fatally undermined Hagan's credibility before the jury. We disagree. On the contrary, the transcript reveals that the judge's overriding concern was to facilitate the presentation of damages evidence to the jury, not to indicate his views on the evidence. Contrast *Adams* v. *Yellow Cab Corp.*, 12 Mass. App. Ct. 931 (1981). We think, in these circumstances, any resultant harm due to the repetition of the phrase was insufficient to taint the jury's deliberations.

The city also claims that prejudice resulted when the judge told the city's witness Laurence Venezia to step down from the stand because he was not prepared to testify.[14] As with the comments on the Hagan testimony, the transcript does

---

[13]THE CITY: "Based on your review of the plans and the drawings, Mr. Hagan, what portion of the carpentry item . . . [w]hat amount relates to asbestos?"

USM: "Objection."

THE COURT: "He may answer, for whatever it's worth."

HAGAN: "It would be my best judgment —"

THE COURT: "You haven't tried to figure it out. We are just working off the top of our head now, are we?"

HAGAN: "Uhm-hum."

THE COURT: "I will sustain the objection on that basis."

The witness went on to give a "good-faith estimate" as to what portion of the evidence presented related to asbestos removal, and acknowledged that it was "off the top of his head." The judge repeated the phrase some eleven times during the course of Hagan's testimony, which took the better part of six days.

[14]The city was attempting to elicit the percentage of the cost of demolition work that related to asbestos removal and that which did not.

WITNESS: "In percentage, . . . I would say that they were about equal. It was approximately cost."

THE COURT: "When did you arrive at that conclusion?"

WITNESS: "Last night."

THE COURT: "Okay. I am going to suspend with this witness. We are running into the same problem we ran into with another witness. The jury is entitled to hear the testimony but I want the testimony to be figured out . . . , not the way he is testifying now. You may step down, but be prepared to come back again, all right? I expect you will instruct him what he is going to do."

not bear out the city's claim that this dealt a mortal wound to the city's case.

Finally, in what might be read to be the most acute example of improper judicial comment, the city claims that the judge's comments regarding an expert witness, one Steven Lindsey, an acoustical engineer, served to undermine his credibility in the eyes of the jury.[15] We disagree.

The city's characterization of these and other comments as prejudicial is, for the most part, overdrawn. Indeed, many of the comments challenged on appeal could be interpreted several ways, especially since "[t]he transcript . . . does not disclose the manner or tone of counsel or judge." *Commonwealth* v. *Haley*, 363 Mass. at 521. It bears repeating that this was an inordinately lengthy trial, with the concomitant multitudinous exhibits and witnesses, and that a certain degree of "judicial displeasure" may have arisen, perhaps out of concern by the judge that the jury be presented with evidence clearly and efficiently.[16] See *Commonwealth* v. *Meadows*, 33 Mass. App. Ct. at 535. While the judge may have made an occasional gratuitous or improper remark in front of the jury, we do not think that, in the context of these lengthy

---

[15]After a break in Lindsey's testimony, the judge stated, "Have in mind that he [Lindsey] graduated from school in 1979." After testimony regarding absorption coefficients, during which the witness made reference to modern technology, the judge stated:

"Before we go any further, what we know today and what things are today, that's not relevant. . . . We're talking about things that . . . happened when this man was seven or eight years old. Now, he is supposed to be able to tell us about what happened in the early '60's when this building was designed."

The judge's comment about this witness's age could have been designed to avoid the tendency of counsel to phrase questions in terms of a witness's personal experience — e.g., "Did you know about this in 1966?"

[16]Indeed, the judge was moved to remark, on the thirty-fifth day of trial, after the testimony of a *defense* witness, "I want to say this on the record to all counsel around, we are over the time estimated for the trial of this case. I expect that people here would use a little more professionalism in examining witnesses . . . . You are going into a lot of things and mentally you have lost sight of what this case is all about . . . . I want this case to move. And I am going to stop either examination or cross-examination when I feel that we are wasting time . . . ."

proceedings, a sufficient basis appears to support the city's claim that it was deprived of a fair and impartial trial. Cf. *Rosenthal* v. *Weckstein*, 19 Mass. App. Ct. 944, 945 (1985).

As to the cumulative impact of the "biased" comments catalogued by the city in its appeal, the instructions given cured any adverse inferences the jury might have drawn. See *Gleason* v. *Source Perrier, S.A.*, 28 Mass. App. Ct. 561, 572 (1990), and cases cited.

2. *Evidentiary rulings.* The city argues that the judge improperly struck documents and restricted testimony offered by it, thereby eviscerating its case and further demonstrating his bias. For example, the city sought to introduce eighty-three separate documents on the issue of USG's knowledge of the hazards of asbestos; the court permitted only twenty-one to be admitted in evidence. On the issue of USM's knowledge of the hazards of asbestos, the court excluded eighteen documents and admitted forty-one. Many of the documents ultimately excluded had already been received in evidence. It is well-settled, however, that a judge may reconsider the admission of incompetent evidence and "strike it out, provided no hardship befalls the party introducing it." *Commonwealth* v. *Haley*, 363 Mass. at 518. The city cannot point to, nor do we discern, any hardship resulting from the exclusion of the contested documents that was not compensated for by the documents that *were* admitted in evidence.

The city also complains that the judge precluded a nonexpert witness, James L. Hubbard, from testifying as to the results of an "asbestos abrasion test" he had conducted in several city buildings. The city takes issue with a host of other evidentiary rulings relating to documents and testimony that, it asserts, collectively minimized the jury's perception of the serious nature of the case and were erroneous as matter of law. There was no reversible error committed by the judge in his evidentiary rulings, a commendable feat in a trial this long.

The trial judge has both the discretion and the responsibility to exclude irrelevant, cumulative, or repetitive evidence. See *Commonwealth* v. *Durning*, 406 Mass. 485, 495 (1990);

*Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 482 (1991). Moreover, the determination as to the relevancy and competency of evidence is "a matter on which the opinion of the trial judge will be accepted on review except for palpable error." *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982), quoting from *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981).

In the context of such a leviathan case, the judge was reasonable in limiting the admission of what can only be deemed cumulative evidence.[17] Both parties were repeatedly reminded of the need to present relevant evidence in a manner that would expedite the already lengthy proceedings and not unnecessarily burden or confuse the jury. Comments by the judge to the jury throughout the trial reflect the judge's desire to facilitate the presentation, in particular, of damages evidence. Contrary to the city's assertions that public policy disfavors the exclusion of evidence, a trial judge may permissibly exclude irrelevant or redundant evidence, either upon objection or sua sponte. Liacos, Massachusetts Evidence § 4.3, at 130-133 (6th ed. 1994). See Proposed Mass.R.Evid. 403.[18] See also *Commonwealth* v. *Haley*, 363 Mass. at 516-519.

3. *Jury instructions.* As a final matter, the city contends that the judge erred in his instructions to the jury with respect to (1) implied warranty, (2) duty of care, and (3) post-sale duty to warn.

The city takes issue with an aspect of the judge's charge on implied warranty. That charge was as follows.

> "The duty to warn extends only to such dangers or defects about which the manufacturer either actually

---

[17]For example, a portion of the evidence the city sought to introduce through the excluded USM documents was actually conceded by USM's president during his testimony.

[18]Proposed Mass.R.Evid. 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

knew about [or] which it reasonably should have known. The term 'should have known' means that the manufacturer is held to that level of knowledge which the expert in the particular industry had or in view of the state of the medical and scientific knowledge in general should have had at that particular point in time."

In the circumstances of this case that instruction was not error.

The city claims that this instruction set out the wrong standard for the defendants' conduct in that it allowed the jury to consider evidence of state of the art, i.e., state of medical and scientific knowledge available at the time of the sale.[19] See *Hayes* v. *Ariens Co.*, 391 Mass. 407, 413 (1984); *Simmons* v. *Monarch Mach. Tool Co.*, 413 Mass. 205 (1992). The city maintains that case law and the nature of the tort preclude consideration of state of the art and that, if the product is defective, conduct is irrelevant. See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983) (focus is on "whether the product was defective and unreasonably dangerous and not on the conduct of . . . the seller"). The city relies principally on language in *Hayes* v. *Ariens Co., supra* at 413, that states that "[t]he vendor is presumed to have been fully informed at the time of the sale of all risks. *The state of the art is irrelevant, as is the culpability of the defendant*" (emphasis supplied).

It is not necessary, however, for us to decide whether the *Hayes* dicta, repeated in a footnote in *Simmons* (413 Mass. at 207-208 n.3), means that, regardless of what an ordinarily prudent vendor-manufacturer actually knows, should have known, or could have reasonably foreseen, liability attaches for all risks associated with the product, whether undiscov-

---

[19]Pretermitting whether the city's objection in this regard satisfied the requirements of Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), we note that the thrust of its objection to the charge actually went to the *scope* of the standard of state of the art evidence, not that state of the art is irrelevant, as now argued by the city on appeal. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. at 471 n.25, and cases cited.

ered or undiscoverable.[20] It may well be that consistent with that Supreme Judicial Court language that "state of the art is irrelevant," the adequacy of the warning is based on whether the dangers were scientifically discoverable, even though such discovery had not been made at the time the product was put on the market.[21] In any event, at trial, the city never took the position that evidence of state of the art is irrelevant. The instruction as given was not inappropriate in these circumstances.[22]

The city also claims that the judge erred in preliminarily informing the jury on the sixth day of trial that the principal liability issue in a negligence case is what a reasonable person in the position of the defendants knew about the foreseeable hazards of their asbestos-containing products. The judge cured any potential error when he gave his complete charge immediately prior to deliberations. The judge stated that the duty of care is what the ordinary, reasonably prudent manufacturer knew or reasonably "would or should have known" about the risks inherent in its product. *Back* v. *Wickes Corp.*, 375 Mass. 633, 643 (1978).

The city's final contention is that the judge erred by refusing to instruct the jury that the defendants had a continuing postsale duty to warn under a negligence theory. The city

---

[20]A Federal court, purporting to apply Massachusetts law, has held that a manufacturer is not clairvoyant and cannot be expected to give adequate (i.e., "meaningful [and] effective") warnings about "unknown or unknowable risks." *Anderson* v. *Owens-Illinois, Inc.*, 799 F.2d 1, 4 (1st Cir. 1986). See also *Welch* v. *Keene Corp.*, 31 Mass. App. Ct. 157, 163 (1991); Restatement (Second) of Torts § 402A comment j (1963).

[21]In his several efforts to distinguish negligence from breach of warranty, at one point, the judge, setting the two theories in juxtaposition, stated that "[i]n assessing the warranty claim you ask yourselves whether you the jury with the benefit of hindsight considered the product reasonably safe for its intended purpose."

[22]The city initially requested sixty-nine instructions and then sought forty-three additional instructions in two supplemental requests. It is of particular note that there was no specific postcharge (or precharge) challenge to the judge's use of the phrase "state of the art," nor a single discrete request among that entire group that linked (or uncoupled) irrelevancy of state of the art evidence to breach of warranty. See also in this regard, note 19, *supra*.

maintains that this duty was reaffirmed in *Hayes* v. *Ariens Co.*, *supra.* We disagree. The *Hayes* court stated clearly that it has *never* suggested "that a manufacturer has a duty to advise purchasers about post-sale safety improvements that have been made to a [product] that was reasonably safe at the time of sale." 391 Mass. at 411. Cf. *doCanto* v. *Amtek, Inc.*, 367 Mass. 776, 784-785 & n.9 (1975).

*Judgments affirmed.*