A Superior Court jury convicted the defendant, Matias Barca, of unarmed robbery and four counts of attempt to commit a crime (unarmed robbery). The defendant now appeals alleging that the trial judge erred in allowing the victims to identify the defendant in court and in denying the defendant's motion to recuse herself from presiding over the trial. We affirm.
Background. In the early morning hours of June 26, 2009, a group of friends, ranging in age from fifteen to about twenty years old, was walking home from Davis Square in Somerville when a group of men started following them. Three of those men caught up to the group of friends; one put a knife to the throats of two of the young men, while the other two robbed them. The victims all agreed that one white male, one black male, and one Hispanic male were the primary actors, with the rest of the group of men standing off to the side. When two of the victims attempted to run away, a third victim called 911 on his cellular telephone. As a police cruiser approached, the group of men fled the scene. Police apprehended two of the suspects, including the defendant, a short distance away as they attempted to leave the area in a black sport utility vehicle. Shortly thereafter, police brought two of the victims over for a "show up" identification. Both victims identified one of the suspects, who is black. Only one of the victims identified the defendant, who is Hispanic; that victim told police that while the defendant was present for the robbery, he did not participate. At that time, police did not arrest the defendant.
The next morning, Somerville police Detective Paul Duffy and four of the victims met at the home of two of the victims. Duffy individually showed each victim a photographic (photo) array, and each victim identified the same person as the white male who robbed them. Duffy later met with a fifth victim at a different location and showed him the photo array; that victim identified the same white male as did the other four victims. Duffy testified at trial that he showed each of those victims a photo array containing "eight pictures of white guys." After showing the photo array to the four victims at the home, Duffy mentioned that police were still seeking information on the third suspect. One of the four victims reiterated that he had identified the defendant at the show up the previous night. Based on this information, police obtained a warrant and arrested the defendant.
Before trial, the defendant moved to preclude the Commonwealth from introducing any in-court identification of the defendant by the victims. During the two-day hearing on the motion, the judge heard testimony from four of the victims and Duffy. Several times during the hearing, the judge offered the defendant the opportunity to have the Commonwealth put together a nonsuggestive photo array for the victims who were testifying or to have the defendant seated among the court room audience for identification. The defendant declined these offers. Following the hearing, the judge denied the defendant's motion. The judge found that "there [was no] out-of-court identification" of the defendant as one of the perpetrators. Concluding that "there has been nothing ... suggestive of [the defendant] being the culprit that has occurred since the incident and the trial," the judge ruled that the victims' opportunity to observe the defendant during the robbery provided an adequate basis for permitting them to identify the defendant in court.[2]
Discussion. 1. In-court identifications. The defendant argues that the trial judge erred in denying his pretrial motion in limine to exclude his in-court identification, claiming that the identification's "probative value was outweighed by unfair prejudice because [it] was suggestive and unreliable." See Commonwealth v. Johnson, 473 Mass. 594, 599 (2016). See also Commonwealth v. Jones, 423 Mass. 99, 107, 109 (1996).
In Commonwealth v. Crayton, 470 Mass. 228, 241-242 (2014), the Supreme Judicial Court announced a prospective rule precluding in-court identifications where the witness had made no pretrial identification, except on a showing of "good reason," to be applied in trials commencing after December 17, 2014. Because the defendant's trial took place before that date, the prospective rule announced in Crayton does not apply. See Commonwealth v. Bastaldo, 472 Mass. 16, 31 (2015). "Instead, we evaluate the alleged errors under the existing law at the time of trial." Ibid.
Prior to Crayton, longstanding case law held that a judge should exclude an in-court identification only where "it is tainted by an out-of-court confrontation arranged by the Commonwealth that is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " Commonwealth v. Carr, 464 Mass. 855, 877 (2013), abrogated by Crayton, quoting from Commonwealth v. Bol Choeurn, 446 Mass. 510, 520 (2006). See Simmons v. United States, 390 U.S. 377, 384 (1968). While "[w]e recognize that a degree of suggestiveness inheres in any identification of a suspect who is isolated in a court room ..., such isolation does not, in itself, render the identification impermissibly suggestive." Commonwealth v. Napolitano, 378 Mass. 599, 604 (1979), abrogated by Crayton. As such, "[a]n in-court identification was admissible in the absence of any prior out-of-court confrontation." Bastaldo, supra.
Here, the first time the victims made a formal identification of the defendant as one of the perpetrators was in court during their testimony. Aside from the inconclusive showup procedure, the victims' only out-of-court encounter with the defendant took place during the robbery. The trial judge found that the robbery occurred over a period of "between five and ten minutes," that the two groups were "about fifteen feet away from each other in an area ... that has good street lighting," and that for "much of that [time], ... the two groups were facing each other." She also found that "[the defendant] was in the front of his group and for much of that, at a minimum of five minutes, [the defendant's] face was facing the faces of the victims." The trial judge concluded: "[N]othing suggestive of [the defendant] as a perpetrator ... has occurred with these civilians. The question is then can they make an in-court identification. And I'm satisfied that because of the length of time of the incident, and the importance of the incident to them ... that their antennae are even more attentive." We agree with the trial judge that there was nothing suggestive about the events as they unfolded with the defendant that would create a substantial likelihood of irreparable misidentification in court.
2. Motion to recuse. The defendant also contends that the trial judge's actions and demeanor toward defense counsel deprived him of a fair trial, and that the trial judge should have recused herself from the proceedings. However, a review of the trial transcript shows that the antipathy between the trial judge and defense counsel was largely a result of counsel's repeated interruption of witnesses, the prosecutor, and the trial judge herself, as well as counsel's stridently voiced displeasure over a number of the trial judge's rulings.
"The matter of recusal is generally left to the discretion of the trial judge, and an abuse of that discretion must be shown to reverse a decision not to allow recusal." Haddad v. Gonzalez, 410 Mass. 855, 862 (1991) (citation omitted). "When faced with 'a question of [her] capacity to rule fairly, the judge [must] consult first [her] own emotions and conscience.' If [she] pass[es] the internal test of freedom from disabling prejudice, [she] must next attempt an objective appraisal of whether this [is] 'a proceeding in which [her] impartiality might reasonably be questioned.' " Commonwealth v. Eddington, 71 Mass. App. Ct. 138, 143 (2008) (citations and quotation omitted).
Here, the trial judge told the parties that she had searched her conscience, and concluded: "I have had a chance to examine my conscience about whether I remain, and have remained, fair and impartial.... And I'm satisfied, having examined my conscience[,] that I have been fair and impartial ... [and] will remain fair and impartial." The trial judge added that she was "not the least bit bothered" by defense counsel stating that she had reported the trial judge to the "Judicial Conduct Commission and to the Mass. Association ... of Defense Counsel." The record before us does not hint of partial treatment in favor of the prosecution or of unfairness to the defense during the course of the trial. Nor was the trial judge the trier of fact. See Commonwealth v. Leventhal, 364 Mass. 718, 725-726 (1974). The trial judge's remark to the jury to "disregard counsel's unprofessional remark," while perhaps best left unsaid, was merely "a show of evanescent irritation-a modicum of quick temper that must be allowed even judges." Commonwealth v. Meadows, 33 Mass. App. Ct. 534, 536 (1992), quoting from Offutt v. United States, 348 U.S. 11, 17 (1954). There was no error.[3] See Commonwealth v. Gogan, 389 Mass. 255, 259-260 (1983).
Judgments affirmed.

While there was contradictory testimony as to whether Duffy showed any of the victims a photo array that included the defendant, the trial judge, in her findings of fact, credited Duffy's testimony that he only showed a photo array of white males and found that "no array of Hispanic males has ever been shown to any of the civilian witnesses."

The judge also instructed the jurors that they "should not consider anything [she has] said or done during this trial as any indication that [she has] any opinion as to how [they] should decide this case," and to disregard any beliefs that she has an opinion on the case or what the verdict should be. That firm instruction was "likely to have gone a long way in neutralizing any impression that might have been conveyed that the judge thought ill of the defendant." Meadows, supra at 538-539.