ADOPTION OF DERRICK.

Worcester. February 3, 1993. - June 8, 1993.

Present: LIACOS. C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ

*Adoption*, Parent's consent. *Minor*, Adoption. *Parent and Child*, Adoption.

A parent who voluntarily and unconditionally signs a final surrender of
custody of his or her child for adoption pursuant to G. L. c. 210, § 2,
may not later petition to adopt the child under the provisions of G. L.
c. 210, § 2A (B), as a "blood relative," but rather must proceed under
G. L. c. 210, § 2A (E), which requires the consent and support of the
Department of Social Services. [442-445]

In circumstances where a mother voluntarily surrendered custody of her
child for adoption, where a judge found that the consent was uncoerced,
informed and effective, and where the mother did not appeal from that
determination, the mother waived her right to have the court examine
her parental fitness in a subsequent proceeding brought by the mother
to adopt her own child. [445-446]

PETITION filed in the Worcester Division of the Probate
and Family Court Department on April 10, 1991.

The case was heard by *John J. Moynihan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Warren M. Yanoff* for the mother.

*Virginia A. Peel* for Department of Social Services.

*Carol A. Erskine* for the interveners.

*John Mackey* (*Stefan M. Nathanson* with him) for the
minor.

ABRAMS, J. In this case the mother voluntarily consented
to the adoption of her child. See G. L. c. 210, § 2 (1990
ed.). On the eve of the adoption proceedings, the mother filed
a motion seeking to revoke her consent. A judge denied it.
Subsequently, the mother filed a petition seeking to adopt
her child. See G. L. c. 210, § 2A (1990 ed.). After hearing,

a different judge concluded that the mother voluntarily consented to the adoption of her son and denied the mother's petition to adopt her son. The mother appeals from the order denying her petition. The mother argues that the plain language of G. L. c. 210, §§ 2 and 2A, allows her to petition to adopt the child. We transferred this case here on our own motion. We affirm.

Derrick was born on March 10, 1984. In 1987, the Department of Social Services (DSS) placed him in foster care and he has remained with that foster family since then.

On January 19, 1989, DSS filed a petition to dispense with the mother's consent to adoption, pursuant to G. L. c. 210, § 3 (1990 ed.). On March 20, 1990, the mother signed a voluntary surrender pursuant to G. L. c. 210, § 2. The foster parents, with the support of DSS, petitioned to adopt Derrick on January 3, 1991, and a hearing was scheduled for January 29, 1991. On January 28, 1991, the mother filed a petition to revoke her voluntary surrender. A Probate and Family Court judge held a hearing and made findings of fact and denied the motion to revoke her voluntary surrender.

The judge found that, in 1988, the mother participated in a three-month rehabilitation program and two consecutive three-month stays in halfway houses as a result of substance abuse. The judge found that the mother had been drug and alcohol free since October, 1988. Nonetheless, the judge determined that the mother was unable to provide suitable housing for Derrick.

· The judge then reviewed the process by which the mother decided to surrender Derrick to DSS. The judge noted that a social worker stated that she discussed a surrender with the mother on five to ten occasions between September, 1989, and March, 1990. The judge found that these discussions did not begin until Derrick had been in foster care for more than two years and that the discussions were appropriate. The judge determined that the mother is a "thoughtful and rational individual who has overcome serious personal problems and has the ability to comprehend the consequences of her

actions." The judge also found that, "[b]etween September 1989, and March 1990, [the mother] gave substantial thought and consideration to the adoption surrender. She independently, and without DSS involvement, sought the advice, guidance and opinion of numerous individuals, including her mother, fellow attendees at AA [Alcoholics Anonymous] meetings, her AA sponsor, her therapist at Catholic Charities, her attorney and a friend who had previously been in a similar situation and who had decided to sign an adoption surrender." The judge also noted that the mother spoke with an attorney and understood that the attorney was available to answer any of her legal questions regarding the surrender.

The judge made findings regarding the actual signing of the surrender. The judge found that the mother, the social worker, the witnesses, and the notary met on March 20, 1990, at which meeting the social worker spent thirty minutes explaining to the mother DSS's publication, "Adoption Surrender and Alternatives — A Parent's Guide."[1] The social worker also reviewed the statutory surrender document, "emphasiz[ing] the finality and irrevocability of the surrender. She defined 'irrevocable' several times and in several different ways in order to ensure the mother's understanding." The judge found that, at the time she signed the surrender, the mother understood that her decision was final and could not be changed. The judge found that, "[a]lthough [the mother's] decision to execute an adoption surrender was difficult and emotional, it was fully informed and one which she was competent to make. It was not the result of duress, coercion or undue pressure or influence. She gave the matter serious thought over an extended period of time. She sought and obtained the advice of many individuals completely independent of DSS. Throughout the process she was represented by competent counsel who was aware of her decision. All documents were explained to her. Her legal rights were scrupu-

---

[1] The social worker had given the mother a copy of this publication the previous day.

lously observed. She understood the significance and finality of the surrender. Her decision and actions were voluntary and informed." As a result, the judge denied the mother's motion to revoke her consent. The mother did not appeal.

On April 10, 1991, the mother filed a petition to adopt Derrick. DSS challenged this petition and the prospective adoptive parents were allowed to intervene. A second judge adopted the findings the first judge made when ruling on the petition to revoke the surrender. He then found that "the uncoerced, informed and irrevocable execution of the surrender of the child to the custody of [DSS] constituted a final determination that such was in the best interest of the child." The judge determined that the mother may not have that issue relitigated through a petition for adoption. The judge denied the mother's petition. That denial is the subject of the appeal.

The mother argues that the judge erred in dismissing her petition for adoption without holding a hearing on the merits. She points to the language of G. L. c. 210, §§ 2 and 2A. Section 2 states in part that "[a] person whose consent is hereby required [in order for a decree of adoption to be entered] shall not be prevented from being the adoptive parent." The natural mother is one of whom consent is required under G. L. c. 210, § 2. The statutory surrender form states that the individual signing "voluntarily and unconditionally surrender[s] (child) to the care and custody of (agency or person receiving custody) for the purpose of adoption or such other disposition as may be made by a court of competent jurisdiction." The form also includes, in capital letters and bold print, the statement "I understand that this surrender is final and cannot be revoked." G. L. c. 210, § 2.[2] Sec-

---

[2]The consent form, included in the statute, reads: "I, as the (relationship) of (name of child), age    , of the        sex, born in (place of birth), on (date of birth), do hereby voluntarily and unconditionally surrender (child) to the care and custody of (agency or person receiving custody) for the purpose of adoption or such other disposition as may be made by a court of competent jurisdiction. I waive notice of any legal proceeding

tion 2A sets out certain conditions that must be met before a decree of adoption can be entered. One of these is that "[t]he petitioner is a blood relative of the child sought to be adopted." G. L. c. 210, § 2A (B). Section 2A dispenses with the need for DSS to consent to an adoption where a blood relative is adopting the child. We must determine whether a parent who surrenders a child to the custody of DSS so that the child may be adopted may petition to adopt after the surrender.

The mother argues that a plain reading of these sections compels the conclusion that, although she signed a surrender, she may petition to adopt her son without the approval of DSS. She also suggests that, in ruling on her petition to adopt, the judge should have determined what was in the best interests of Derrick, and not considered solely the effectiveness of her surrender.

DSS disputes the mother's assertion that the statute allows a parent, who has signed a voluntary surrender, to petition to adopt the child later. DSS argues that the statute allows an individual who has surrendered a child to DSS to adopt the child only if DSS sponsors that individual. When the lan-

---

affecting the custody, guardianship, adoption or other disposition of (child).

"I UNDERSTAND THAT THIS SURRENDER IS FINAL AND CANNOT BE REVOKED.

/s/ (person giving consent)
"On this      day of      19    , before me personally came and appeared and in my presence duly executed the foregoing instrument, and (he, she) acknowledged to me that (he, she) executed the same as (his, her) free act and deed, fully cognizant of its irrevocability.
"Date
"State of

"Notary Public
"County of

"Signed by (name of person giving consent) as (his, her) freely executed consent in the presence of each of us, and of each other, who thereafter have hereunto signed our names as witnesses.

/s/
Address

/s/
Address"

guage of a statute is clear and unambiguous, the statute must be given its plain meaning. *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). When the language is less clear, we must interpret the statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Telesetsky* v. *Wight*, 395 Mass. 868, 872 (1985), quoting *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). We also have determined that "a statute should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight, supra* at 873.

DSS asserts that the signing of a § 2 form freeing a child for adoption alters the position of the parent. In those circumstances a parent may not petition as a blood relative to adopt the child. Instead, the parent must proceed under G. L. c. 210, § 2A (E), which requires that the parent have the support of DSS. As support, DSS notes that G. L. c. 119, § 29B (1990 ed.), requires that the court that grants custody to DSS review the future status of the child within eighteen months of the first order and periodically after that. If the child has been freed for adoption, there is no provision for notice to the biological parents.[3]

The fact that the statute does acknowledge that DSS will not always be involved in an adoption does not affect our decision. When a petitioner is a blood relative, an adoption decree may be entered without DSS's approval. See G. L. c. 210, § 2A (B). In addition, the requirement that DSS be notified of the adoption of any child under fourteen so that DSS may conduct an assessment and submit a written report to the Probate Court may be waived when one of the petitioners is the parent. G. L. c. 210, § 5A. These provisions

---

[3]The Uniform Probate Court Practices do not require notice of periodic reviews to be given to biological parents who have freed their children for adoption.

do not specifically concern the situation of a parent who voluntarily consented to an adoption. We agree with DSS that, once a surrender has been signed, the biological parent has surrendered custody of the child to DSS. DSS then becomes the facilitator of the child's adoption. We agree that, once this consent has been given, no adoption may occur without DSS's consent and sponsorship. To hold otherwise would require DSS always to proceed under G. L. c. 210, § 3, in order to avoid the risk of a parent's vacillation and increased delay.

The mother asserts that the judge who denied her petition to adopt should have considered whether it would be in the best interest of Derrick to reunite the family despite her voluntary surrender.[4] She claims that this is the only way to interpret the statute consistently with our ruling in *Adoption of Carlos*, 413 Mass. 339 (1992). We do not agree.

DSS had custody of Carlos as a result of a care and protection petition under G. L. c. 119, § 26. DSS had moved under G. L. c. 210, § 3, to dispense with the consent of Carlos's mother to his adoption. *Id.* at 340. After a hearing, the judge denied the DSS petition. We affirmed, noting that, in a proceeding to terminate all parental rights, under G. L. c. 210, § 3, the judge properly could consider future parental fitness. *Id.* at 348.

Here, the mother waived her right to have the court examine her parental fitness. DSS had filed a petition to dispense with the need for the mother's consent to the adoption of Derrick under G. L. c. 210, § 3. In the hearing on the petition, the judge could "consider the ability, capacity, fitness and readiness of the child's parents . . . to assume parental responsibility." G. L. c. 210, § 3 (*c*). Because the mother consented to the adoption, the hearing did not take place. Had the mother not consented, DSS would have had

---

[4]We have allowed a consent to adopt to be withdrawn at the hearing on a petition to adopt. *Erickson* v. *Raspperry*, 320 Mass. 333, 335 (1946). "It was the duty of the judge to be guided by the established principles governing the disposition of petitions for adoptions, the most fundamental of which is that the paramount issue is the welfare of the child." *Id.*

to prove by clear and convincing evidence that the mother was currently unfit to further the child's best interest. *Adoption of Carlos, supra* at 348, citing *Care & Protection of Martha*, 407 Mass. 319, 327 (1990). Then, under *Adoption of Carlos, supra*, the judge might have considered the mother's future parental fitness. However, the mother voluntarily surrendered her custody. That consent cannot be withdrawn without the permission of the probate judge. See *Adoption of Thomas*, 408 Mass. 446, 450-451 (1990); *Surrender of Minor Children*, 344 Mass. 230, 234 (1962); *Wyness* v. *Crowley*, 292 Mass. 461, 464 (1935). The judge found the consent was effective. The mother did not appeal.[5]

*Order denying the mother's petition for adoption affirmed.*

---

[5]The mother knew that the foster parents were the preadoptive parents whom DSS would be sponsoring. The mother told Derrick that he would be living with them. At the hearing on the foster parents' petition to adopt Derrick, the judge will determine what is in the best interests of Derrick.