ORRINA TURNER *vs*. DENISE LEWIS
(and a consolidated case).

Suffolk. February 8, 2001. - June 15, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Abuse Prevention. Protective Order. Statute*, Construction. *Words*, "Family or household members," "Related by blood.":

This court concluded that a paternal grandparent of a child whose parents were not married was "related by blood" to the child's mother and had the right to invoke protection from domestic abuse under G. L. c. 90A. [332-336] COWIN, J., dissenting, with whom SOSMAN, J., joined.

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on September 10, 1999.

A request for an extension of a protective order was heard by *Elaine M. Moriarty*, J., and a motion for reconsideration was heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Pauline Quirion* for the plaintiff.

*Rochelle Bobroff & Michael Schuster* for American Association of Retired Persons & others, amici curiae, submitted a brief.

IRELAND, J. This appeal raises the question whether the paternal grandparent of a child whose parents were not married is "related by blood" to the child's mother, and thus, has a right to invoke protection from domestic abuse under G. L. c. 209A. We answer yes.

The plaintiff in this case is the paternal grandmother of a ten year old child, whose parents were never married. The grandmother has custody of the child, and the child resides with her. The child's mother presently has visitation rights with the child, although she does not pay child support to the grandmother.

The grandmother makes the following allegations. On September 2, 1999, the mother entered the grandmother's home unannounced and without permission while the grandmother and the child were upstairs. The mother, who appeared "obviously high," yelled for the child and demanded that she come downstairs. The grandmother told her that the child was not at home. When the grandmother then attempted to descend the stairs, the mother blocked her, and punched and pushed her, saying, "You know what I want to do to you, don't you?" The mother then punched the grandmother again and pushed her up against the wall, causing the grandmother's head to hit a windowsill. After hitting the grandmother once more, the mother fled the scene in a van. The grandmother telephoned the police.

The grandmother subsequently filed a pro se complaint against the mother for protection from abuse under G. L. c. 209A. Although a Probate and Family Court judge granted the grandmother an emergency protective order, another Probate and Family Court judge declined to extend that order, because she found that the "[p]arties are [not] related by blood, marriage or household membership" as required by the statute. The grandmother filed a timely notice of appeal and also filed a motion for reconsideration, which was denied. She appealed that denial as well. We granted her application for direct appellate review, as well as her motion to consolidate her appeal from the denial of the motion to reconsider with her initial appeal. Because we conclude that the parties are "related by blood," we vacate the Probate and Family Court judge's decision denying an extension of the protective order, as well as the denial of her motion for reconsideration, and remand for an order consistent with this opinion.

In 1978, Massachusetts enacted G. L. c. 209A to address the problem of domestic violence through the provision of judicial remedies. St. 1978, c. 447, § 2. C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 57.4 (2d ed. 1996). "General Laws c. 209A, entitled 'Abuse Protection,' provides "a statutory mechanism by which victims of family or household abuse can enlist the aid of the state to prevent further abuse." *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990). Under G. L. c. 209A, a person "suffering from abuse from an adult or minor

*family or household member* may file a complaint in the court requesting protection from such abuse" in various forms, including the issuance of a protective order, "(*a*) ordering the defendant to refrain from abusing the plaintiff" (emphasis added). G. L. c. 209A, § 3.

The question in this case is whether the abuse was perpetrated by a "family or household member."[1] Under G. L. c. 209A, § 1, "family or household members" include persons who, among other categories, see note 1, *supra*, "(*c*) are or were related by blood or marriage or (*d*) hav[e] a child in common regardless of whether they have ever married or lived together." The grandmother claims that the parties are "related by blood" and have a "child in common," and thus, she qualifies for protection under the statute. Because we conclude that the parties are "related by blood" for the purposes of the statute, we need not reach the question whether they have a "child in common."[2]

When statutory language is clear and unambiguous, the statute must be given its plain meaning. *Adoption of Derrick*, 415 Mass. 439, 443-444 (1993). *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). "When the language is less clear, we must interpret the statute 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Adoption of Derrick*, *supra* at 444, quoting *Telesetsky* v. *Wight*, 395 Mass. 868, 872 (1985). See *Champagne* v. *Champagne*, 429 Mass. 324, 326 (1999). We have also held that "a statute should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight*, *supra* at 873.

---

[1]Under G. L. c. 209A, § 1, family or household members include persons who: "(*a*) are or were married to one another; (*b*) are or were residing together in the same household; (*c*) are or were related by blood or marriage; (*d*) having a child in common regardless of whether they have ever married or lived together; or (*e*) are or have been in a substantive dating or engagement relationship."

[2]We also need not address the grandmother's claim that the Probate and Family Court's interpretation of G. L. c. 209A denied equal protection to victims on the basis of the marital status of family members.

In interpreting the term "related by blood," we recognize that "[a] general term in a statute . . . takes meaning from the setting in which it is employed." *Mahoney* v. *Baldwin*, 27 Mass. App. Ct. 778, 780 (1989). We also bear in mind the importance of "giv[ing] broad meaning to the words 'related by blood,' " and considering "whether the relationship puts the parties into contact with one another, even though they might not otherwise seek or wish for such contact." Commentary to § 3:02 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Dec. 2000).

Here we conclude that the parties are "related by blood." The paternal grandmother, through her son, is "related by blood" to the child. Likewise, the child and her mother are "related by blood." Thus, the child is "related by blood" to both parties, making the mother and grandmother "related by blood" through that child.

Interpreting the term "related by blood" to include the relationship between the grandmother and the mother would be consistent with the Legislature's purpose in enacting c. 209A. We note first that, in light of the grandmother's custody of the child and the mother's visitation rights with the child, there will likely be significant, albeit unwanted, contact between the mother and the grandmother, a fact particularly evidenced by the events that precipitated this appeal. See *id.* The "main object to be accomplished" by c. 209A, *Champagne* v. *Champagne*, *supra* at 326, was the prevention of violence in the family setting. Violence brought on by, or exacerbated by, familial relationships was the "mischief or imperfection to be remedied" by c. 209A. *Adoption of Derrick, supra* at 444, quoting *Telesetsky* v. *Wight, supra* at 872. Moreover, c. 209A has always reflected "[a] significant decision by the legislature . . . to broaden the definition of persons eligible to seek protection from abuse and domestic violence beyond the 'family' and to also include other persons having some 'family-like' connection." C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice, *supra* at § 57.5.

Our conclusion is supported by sound public policy. We take judicial notice of the social reality that the concept of "family" is varied and evolving and that, as a result, different types of

"family" members will be forced into potentially unwanted contact with one another. The recent increases in both single parent and grandparent headed households are two examples of this trend.

With respect to the increase in single parent headed households, "[c]hildren under age [eighteen] are considerably more likely to be living with only one parent today than two decades ago." Marital Status and Living Arrangements: March 1994, Bureau of the Census, United States Department of Commerce (Feb. 1996). See Marital Status and Living Arrangements: March 1998 (Update) Bureau of the Census (Dec. 1998) (between 1970 and 1998, proportion of children under age of eighteen years living with single parent grew from twelve per cent to 27.7 per cent). "High levels of divorce and postponement of first marriage are among the changes that have reshaped the living arrangements of children and adults since the 1970's." *Id.* In the majority of these cases, women are the head of the household. *Id.* (eighty-four per cent of children who lived with single parent in 1998 lived with mother). The often contentious nature of custody arrangements necessitates the protection of these single parents through legislation like G. L. c. 209A.

Likewise, as the amicus brief adverts, there has been a growing phenomenon of grandparents raising their grandchildren in the past thirty years:

> "Between 1992 and 1997, the greatest growth has occurred among grandchildren living with grandparents with no parents present. The increase in grandchildren in these 'skipped generation' living arrangements has been attributed to the growth in drug use among parents, teen pregnancy, divorce, the rapid rise of single-parent households, mental and physical illness, AIDS, crime, child abuse and neglect, and incarceration of parents."

Coresident Grandparents and Grandchildren, Current Population Reports 1, Bureau of the Census, United States Department of Commerce (May, 1999) (75% increase in number of children residing in households headed by grandparents from 1970-1997). See M. Minkler, Intergenerational Households Headed by Grandparents: Demographic and Sociological Contexts, in

Grandparents and Other Relatives Raising Children (Generations United ed. 1998).

When grandparents are charged with the responsibility of caring for their grandchildren, they must often face "the biological parents' frequent resentment of the grandparental custody, and/or their jealousy of the attention being paid by their parents to their offspring." *Id.* at 13. Because of the parental hostility that may accompany grandparental custody, it is imperative that caregivers like the grandmother in this case be protected from such domestic abuse by c. 209A.

These trends require that "[d]omestic violence statutes [such as G. L. c. 209A] offer coverage to a wide range of extended family relationships to fully reflect the reality of American family life [and] . . . [t]he definition of 'family members' embraced by civil protection order statutes must be equally applicable to all concepts of family as they exist in the reality of our diverse family relationships." Klein, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L. Rev. 801, 818-820 (1993). The relationship here meets the definition of "family," carrying with it all the risks and problems inherent in domestic violence. It is within that familial setting that this grandmother was exposed to violence and the threat of future violence.

For these reasons, we conclude that the grandmother and the defendant are "related by blood," and that the Probate and Family Court's ruling contravenes "the Commonwealth's public policy against domestic abuse — preservation of the fundamental human right to be protected from the devastating impact of family violence." *Champagne* v. *Champagne, supra* at 327. Accordingly, we vacate the denial of the extension of the protective order, and the denial of the motion for reconsideration, and remand these cases to the Probate and Family Court for an order consistent with this opinion.

*So ordered.*

COWIN, J. (dissenting, with whom Sosman, J., joins). I respect-

fully dissent. In my view, the legislative history indicates that the phrase "related by blood" was not intended to encompass persons such as the paternal grandmother and mother in this case.

The court's decision ignores legislative history and bases its decision on social policy. General Laws c. 209A was enacted in 1978. St. 1978, c. 447, § 2. At that time a family or household member was defined as a "household member, a spouse, former spouse or their minor children or blood relative." *Id.* § 2. In 1986, the definition of a family or household member was amended to include a "blood relative *or* person who, though *unrelated by blood* or marriage, is the parent of the plaintiff's minor child" (emphasis supplied). St. 1986, c. 310, § 15. Pursuant to this change, two unmarried parents were considered family or household members because of their status as parents, not because of their blood connection to the child. By this definition, the Legislature expressly indicated that in its view the parents of a child were "*unrelated* by blood," despite any blood connection they have to their child (i.e., the father is related by blood to the child, and the mother is related by blood to the child, but, according to the statute, the father and mother are "unrelated by blood" to each other). Thus, if a father is "unrelated by blood" to the child's mother, then, a fortiori, a paternal grandmother also would be "unrelated by blood" to the child's mother.

In 1990, the definition of family or household member was amended again to its current version. The definition now includes, among others, persons "related by blood" and persons "having a child in common regardless of whether they have ever married or lived together." G. L. c. 209A, as appearing in St. 1990, c. 403, § 2, and as amended through St. 1996, c. 450, § 232. The statute continues to define unmarried parents as family members because of their status as parents, not because of a "blood" connection through their mutual child. Again, if the natural parents of a child would not be considered "related by blood," then the paternal grandmother is not "related by blood" to the child's mother.[1]

I recognize that each amendment of the definition of family

---

[1]Additionally, although not addressed by the court, I do not believe that the paternal grandmother and mother in this case would fall within the category of persons "having a child in common." The phrase "having a child in com-

or household member has broadened the categories of persons eligible for a protective order. However, the language and history of the statute do not support the court's interpretation on the present issue. Consequently, the court attempts to compensate by resorting to "the social reality that the concept of 'family' is varied and evolving." *Ante* at 334. In identifying this "social reality," the court relies on reports from the United States Bureau of the Census as evidence of changes in family composition. These reports were issued subsequent to the 1990 amendment to the statute; there is no basis for concluding that the Legislature was aware of the information, or, if aware, that it would have based the Commonwealth's policy thereon.

Further, the court recognizes a "trend" in "single parent and grandparent headed households." *Ante* at 335. According to the court, this trend "require[s]" that the protection offered under G. L. c. 209A extend to custodial grandparents, such as the grandmother here, in order "to fully reflect the reality of American family life." *Ante* at 336, quoting Klein, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L. Rev. 801, 818-820 (1993). The role of the judiciary is to construe a statute "so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), quoting *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967). The language of the statute "is the principal source of insight into the legislative purpose." *Commonwealth* v. *Cowan*, 422 Mass. 546, 549 (1996), quoting *McNeil* v. *Commissioner of Correction*, 417 Mass. 818, 822 (1994). I do not believe that it is the court's function to interpret a statute in accordance with the most recent "trend" or judicial perception of what "is best" as a matter of social policy, particularly when such interpretation is not consistent with the

---

mon" is modified by the clause "regardless of whether they have ever married or lived together," which indicates that the Legislature contemplates this phrase to encompass persons who *could* have married or cohabited, but who did not do so.

statutory language. "Whether a statute is wise or effective is not within the province of courts." *Commonwealth* v. *Leno*, 415 Mass. 835, 841 (1993), citing *Commonwealth* v. *Lammi*, 386 Mass. 299, 300 (1982). I recognize that the violence alleged in this case would, in common parlance, be viewed as a form of "domestic" violence, and that the unique remedies of G. L. c. 209A would seem suitable to the situation. However, it is not for this court to engraft G. L. c. 209A onto any dispute that is, in some sense, a "domestic" dispute. The appropriate procedure for protecting a person such as the paternal grandmother in this case is by legislative, not judicial, amendment to G. L. c. 209A.