## LORRAINE LOWERY *vs.* FRANCIS KLEMM.

No. 03-P-306.

Barnstable. March 4, 2004. - April 21, 2005.

Present: LENK, GRASSO, & BERRY, JJ.

Further appellate review granted, 445 Mass. 1101 (2005).

*Anti-Discrimination Law,* Sex, Employment. *Employment,* Discrimination,
Sexual harassment, Volunteer worker. *Statute,* Construction. *Public Policy.*

This court concluded that G. L. c. 214, § 1C, which protects persons from
sexual harassment, extended to volunteers performing services in a
workplace, despite the fact that volunteers did not come within the rubric
of employees under G. L. c. 151B (which included sexual harassment as a
prohibited employment practice), given the legislative purpose and history
of G. L. c. 214, § 1C, its construction in settled case law, its broad reach
coupled with a jurisdictional base grounded in the Superior Court's equity
power, and sound policy against the unfair and absurd result of construing
that statute as inapplicable to a volunteer toiling in a workplace. [310-316]

CIVIL ACTION commenced in the Superior Court Department on
May 31, 2002.

The case was heard by *David A. McLaughlin,* J., on a motion
for summary judgment.

*Kevin M. Orme* for the plaintiff.

*Lee M. Berger* for the defendant.

BERRY, J. This case involves a volunteer worker at a town
swap shop who was sexually harassed by a coworker. The
complaint pleaded a cause of action predicated upon G. L. c. 214,
§ 1C.[1] That particular law preserves the right of a "person" to be

---

[1]General Laws c. 214, § 1C, as amended, St. 2002, c. 223, § 3, in full,
states as follows:

"A person shall have the right to be free from sexual harassment, as
defined in chapter one hundred and fifty-one B and one hundred and
fifty-one C. The superior court shall have the jurisdiction to enforce
this right and to award the damages and other relief provided in the
third paragraph of section 9 of chapter 151B. Any such action shall be

"free from sexual harassment," and confers jurisdiction on the Superior Court to enforce that right in instances where other employment-related statutes, e.g., G. L. c. 151B, may not be applicable. *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 557 (1996). The complaint was dismissed on the defendant's motion for summary judgment. The issue presented is whether G. L. c. 214, § 1C, provides a private statutory right of action to a volunteer worker who is sexually harassed. In our opinion, G. L. c. 214, § 1C, does so provide, and accordingly, we reverse the judgment.

1. *Factual background.* Applying the governing summary judgment standard, which focuses on review of the record in the light most favorable to the nonmoving party, the evidence may be summarized as follows. On a daily basis, the plaintiff, Lowery, worked as a volunteer at the Pick of the Litter, a swap shop operated by the town of Falmouth (town) waste management facility (landfill). For three years, defendant Klemm, who was the gatekeeper and land supervisor at the landfill, made it a point of entering the swap shop and approaching Lowery. During these encounters, Klemm, it is alleged, made sexual advances and subjected Lowery to "verbal and physical conduct of a sexual nature." Klemm persisted in this course of misconduct notwithstanding Lowery's plea that he leave her alone. For reasons not clear in the record, on June 21, 2001, the director of the public works department issued a no trespass order barring Lowery from the landfill and ending her volunteer services. Lowery complained in writing to the town about Klemm's sexual harassment. The town's affirmative action officer rejected Lowery's claim. Thereafter, Lowery brought a one-count complaint under G. L. c. 214, § 1C, alleging sexual harassment.

2. *Analysis.* Whether a volunteer in the workplace may bring an action under G. L. c. 214, § 1C, involves consideration of

commenced in the superior court within the time allowed by said section 9 of said chapter 151B. No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B."

the interplay between that statute and G. L. c. 151B, the latter being the more comprehensive and general statute which covers discriminatory acts by an employer. The interplay between the two laws must be considered in light of major statutory changes in 1986, which affected both laws. See St. 1986, c. 588. In this sweeping 1986 reform law, entitled "An act directed to prohibiting sexual harassment" (the Act), the Legislature both enacted G. L. c. 214, § 1C, declaring the right of "persons" to be "free from sexual harassment," and amended G. L. c. 151B to add sections defining sexual harassment as a form of prohibited practice by any employer.[2]

The simultaneous creation of G. L. c. 214, § 1C (to establish in the Superior Court a right of action for sexual harassment), and the amendments to G. L. c. 151B (to include sexual harassment as a prohibited employment practice) gave rise to the potential for overlap and duplication of sexual harassment litigation under the two statutes.[3] The potential for such duplication was laid to rest in *Green* v. *Wyman-Gordon Co.*, *supra*. In *Wyman-Gordon Co.*, the Supreme Judicial Court held that where

---

[2]The Act's § 2 (as later amended by St. 1987, c. 473, § 2) added the following definition to G. L. c. 151B as § 1(18):

> "The term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual[']s work performance by creating [an] intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment."

The Act's § 3 amended G. L. c. 151B, § 4, to add a new subsection, 16A, which states that "[i]t shall be an unlawful practice . . . [f]or an employer, personally or through its agents, to sexually harass any employee."

[3]At the time the Act was passed, December 9, 1986, the question whether G. L. c. 151B, which generally covered employment discrimination, encompassed sexual harassment had not been judicially determined. The case of *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 162 (1987), pending at the time of passage of the Act, raised precisely that issue. After the statutory amendments become effective, the Supreme Judicial Court decided *College-Town*, holding that sexual harassment was a form of discrimination and that the plaintiff's claim was cognizable under G. L. c. 151B, § 4(1).

G. L. c. 151B applies to discriminatory conduct, including sexual harassment, the administrative procedure specified in c. 151B may not be bypassed; in such cases, G. L. c. 214, § 1C, does not have independent force and does not confer a private right of action. "Where . . . c. 151B applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contrary."[4,5] *Green* v. *Wyman-Gordon Co.*, 422 Mass. at 557-558. Conversely, in instances where c. 151B does not apply, G. L. c. 214, § 1C, "provides exclusive jurisdiction in the Superior Court for any sexual harassment claim that is brought in the courts . . . [if] either (a) the employer is not covered by c. 151B; or (b) the claimant has satisfied the procedural prerequisites for a c. 151B claim and has chosen to pursue the case in court." *Id.* at 557.

Applying these principles, the issue whether G. L. c. 214, § 1C, provides a private right of action to a volunteer worker proceeds along two separate, but interrelated, lines of inquiry: first, does the procedure required under G. L. c. 151B cover and exclusively occupy the field; second, if c. 151B does not so cover, does the claim fit within the jurisdictional mandate of G. L. c. 214, § 1C, so as to afford private statutory litigation rights — in this case to a volunteer worker to redress sexual harassment in the workplace.

Turning to the first line of inquiry, in order for G. L. c. 151B to apply, the person or entity engaging the worker must be an "employer," and the worker an "employee," within the definitional meanings set forth in the statute. The Supreme Judicial Court has construed these definitions as tracking the traditional common-law standards for an employment relationship.

---

[4]We note, in passing, that a similar rule of statutory exclusion applies to claims under the Massachusetts equal rights act, see G. L. c. 93, §§ 102-103 (ERA). Thus, if a claim exists under G. L. c. 151B, the plaintiff's claims under the ERA are precluded. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 586 (1994). But if G. L. c. 151B does not apply, any claims based on the ERA have independent vitality. *O'Connell* v. *Chasdi*, 400 Mass. 686, 693 & n.9 (1987) (where G. L. c. 151B, is inapplicable, a plaintiff may pursue a sexual harassment claim against her employer under the civil rights act).

[5]General Laws c. 151C, the Fair Educational Practices Act, has no applicability to Lowery's claims, which arose in a work setting.

"Although the Commonwealth's employment discrimina-
tion law, G. L. c. 151B, affects a 'broad array of employ-
ment practices' and extensively prohibits discrimination
against certain protected classes, we do not read the statute
as intending to broaden the definition of employee. . . .
In the absence of any indication to the contrary, we will
not assume that the Legislature intended to cover relation-
ships outside the traditional common law employer-
employee relationship."

*Comey* v. *Hill*, 387 Mass. 11, 15 (1982).

Thus, in *Hill*, the court held that G. L. c. 151B did not apply
to a person working as an independent contractor. In the same
vein, a volunteer is not an employee under traditional common-
law standards and, thus, would fall outside the protection for
employees as codified in G. L. c. 151B. For a volunteer, the
badges and incidents of a traditional employment relationship
— including, in particular, the quid pro quo of compensation
for work — are missing. There is no monetary component, no
fringe benefits, and no retirement package; the state unemploy-
ment compensation system, G. L. c. 151A, does not apply.
Simply put, the work of a volunteer turns on the willingness of
the person to provide services, in effect, on a pro bono basis.

That a volunteer does not fall within the G. L. c. 151B
employee/employer common-law definitional structure does not
end the analysis, but rather brings to the fore the second part of
the inquiry, i.e., whether G. L. c. 214, § 1C, provides a remedy
for a volunteer worker's sexual harassment claim. We begin
with the overarching principle that "G. L. c. 214, § 1C, ensures
that *all* employees are protected against sexual harassment in
the workplace, whether or not their employers fit within the
definition in c. 151B." *Green* v. *Wyman-Gordon Co.*, 422 Mass.
at 557 (emphasis original). For the reasons hereinafter stated,
we determine that § 1C covers a volunteer worker.

We first turn to the judicial analysis of G. L. c. 214, § 1C,
that has been developed in similar employment-based contexts.
We do so because it is appropriate to look to the statutory
analysis of § 1C utilized in other employment-related cases in
which G. L. c. 151B was held not to apply, and in which § 1C
was held by the court to fill in the gap to guard against sexual

harassment in the workplace. One such instance is where the employing entity has fewer than six employees. See G. L. c. 151B, § 1(5). In this situation, the Supreme Judicial Court has determined that G. L. c. 214, § 1C, fills the field. "Just as G. L. c. 151B provides an exclusive remedy for sexual harassment claims against employers with six or more employees, G. L. c. 214, § 1C, provides the exclusive remedy for such claims against employers of fewer than six employees." *Guzman* v. *Lowinger*, 422 Mass. 570, 572 (1996). "[E]mployees who cannot file claims with the MCAD because of limited size of the workforce, see G. L. c. 151B, § 1(5) (employers of fewer than six employees not included) are protected under § 1C." *Green* v. *Wyman-Gordon Co.*, 422 Mass. at 557.

Second, we consider the legislative history. In determining the reach of G. L. c. 214, § 1C, the Supreme Judicial Court has observed that § 1C is not "plain and unambiguous on its face" and that, therefore, the court may "go beyond its express language to construe it. While the statute gives the Superior Court jurisdiction over sexual harassment claims, it is not clear [the extent to which and] when that jurisdiction attaches. Furthermore, we have on occasion looked at the history and purpose of an apparently unambiguous statute to determine the intent of the Legislature." *Id.* at 554 n.4. See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986).

In the instant case, the legislative history supports the application of § 1C to a volunteer worker. The comprehensive, deliberate legislative actions in the 1986 law "prohibiting sexual harassment" — which effectuated the enactment of G. L. c. 214, § 1C, simultaneously with the amendments of c. 151B to add sexual harassment in employment to the list of unfair employment practices — bespeak a legislative intent comprehensively and broadly to reach sexual harassment wherever occurring, including in nontraditional employment structures. In this regard, it is "noteworthy that these sections [amendments to G. L. c. 151B and the insertion of G. L. c. 214, § 1C, to cover sexual harassment] were added at a time when it was unclear whether *any* existing statute or constitutional provision provided a remedy for victims of sexual harassment" (emphasis original). *Green* v. *Wyman-Gordon Co.*, 422 Mass. at 556. The

temporally conjunctive amendments to c. 151B and c. 214, § 1C, expanded the protection and remedies available to victims of sexual harassment as well as the potential class of claimants who could seek relief for unlawful discriminatory acts. *Ibid.* As such, the legislative history map has lines drawn wide enough to encompass myriad working environments and to prohibit sexual harassment in virtually all such working environments.[6] In this respect, it is to be noted that neither compensation for work, traditional employee benefits nor the common-law employment relationship extend so far as these broadly drawn map lines.

In addition, in construing the scope of § 1C we are guided by general principles of statutory construction, which focus on the language of the statute, the reason for its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. "When the language [of a statute] is less clear, we must interpret the statute according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Turner* v. *Lewis,* 434 Mass. 331, 333 (2001), quoting from *Adoption of Derrick,* 415 Mass. 439, 444 (1993) (quotation marks omitted).

With these general admonitions in mind, we give weight to the fact that, in enacting G. L. c. 214, § 1C, the Legislature did not limit the reach of § 1C to the defined term *"employee"* but,

---

[6]Beyond the two statutes most directly implicated in this appeal, the Act amended other Massachusetts laws, e.g., it amended G. L. c. 151A, § 25 (covering unemployment compensation), by adding a definition of sexual harassment and further providing that "[a]n individual shall not be disqualified . . . from receiving benefits if it is established . . . that the reason for leaving work and that such individual became separated from employment [was] due to sexual, racial or other unreasonable harassment." See St. 1986, c. 588, § 1. The Act also added a definition of sexual harassment to G. L. c. 151C, §§ 1 and 2 (the Fair Educational Practices Act, or FEPA), making it an unlawful practice in the educational environment for an employer, personally, or through its agents subject to FEPA, to sexually harass students in any program or course of study in any educational institution. See St. 1986, c. 588, §§ 4, 5.

instead, explicitly granted to all *"persons"* the right to be free from sexual harassment. See note 1, *supra.* This broad grant is consistent with coverage extending to nontraditional employment environments — such as that within which a volunteer works.

We also consider significant the Legislature's decision separately to codify the prohibition against sexual harassment in § 1C *not* in an employment-related statute, but rather within c. 214 of the General Laws (conferring equity jurisdiction). This equity-based codification suggests a more encompassing statutory reach than traditional employer/employee configurations. See *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 289 (1997); *Ruffino* v. *State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1043 (D. Mass. 1995).

Lastly, we consider sound public policy. In construing a statute in which the language does not provide a hard and fast meaning, we may take notice of whether the construction advocated accomplishes the statutory object and "is supported by sound public policy." *Turner* v. *Lewis*, 434 Mass. at 334. In these times of budget restrictions, volunteers have come forward to provide help in our schools, provide companionship and assistance in our hospitals, feed the homeless in shelters and staff local libraries. Given the statutory protection in G. L. c. 214, § 1C, that "[a] person shall have the right to be free from sexual harassment" — a law created as a central provision in a sweeping Act directed at prohibiting sexual harassment — and given the overarching principle that "G. L. c. 214, § 1C, ensures that *all* employees are protected against sexual harassment in the workplace, whether or not their employers fit within the definition in c. 151B" (emphasis original), *Green* v. *Wyman-Gordon Co.*, 422 Mass. at 557, we determine as a matter of statutory application and construction that G. L. c. 214, § 1C, was intended to protect a volunteer worker from acts of sexual harassment.

Indeed, to construe the statute as inapplicable to a volunteer toiling in a workplace would give rise to unfair and absurd results: unpaid volunteer workers, serving the community, could be subjected to sexual harassment but would not be covered by the panoply of statutorily based rights of action (which provide

greater protections and grant a broader array of remedies and tools for enforcement than are available at common law).[7] Courts will not construe statutes in a manner such that "the consequences . . . are absurd or unreasonable." *Attorney Gen.* v. *School Comm. of Essex,* 387 Mass. 326, 336 (1982).

The following illustration underscores the unfair and absurd results that would flow from a construction of G. L. c. 214, § 1C, that would exclude a volunteer worker: both a volunteer assisting an elderly person in a hospital and a compensated employed nurse working in tandem with the volunteer could be subjected to sexual harassment. The volunteer would have no statutory protection to bring an action under § 1C, while the nurse could proceed to assert her rights immediately under G. L. c. 151B. Similar examples abound, e.g., the unpaid volunteer law school intern, working and sitting next to the compensated employed law clerk; the elementary school unpaid volunteer teacher's assistant, helping a student in joint sessions with a compensated employed special reading teacher; the unpaid volunteer in the town library, shelving books next to a compensated employed shelving assistant. From all that appears, G. L. c. 214, § 1C, was legislatively designed to, and we see no public policy reason why it would not be deemed to apply to, preserve and protect for volunteers the same discrimination-free environment — not dusted by sexual harassment — statutorily fostered for the volunteer's paid counterpart. See *Katz* v. *Massachusetts Commn. Against Discrimination,* 365 Mass. 357, 366 (1974). Cf. *O'Connell* v. *Chasdi,* 400 Mass. 686, 694 (1987).

In sum, the legislative purpose and history of G. L. c. 214, § 1C, its construction in the settled case law, its broad reach coupled with a jurisdictional base grounded in the Superior Court's equity power[8] and sound policy analysis leads in our view to the conclusion that G. L. c. 214, § 1C, was intended to, and does, extend protection against sexual harassment to

---

[7]The defendant argues that volunteers like Lowery are not without a remedy for any sexual harassment they have endured. That misses the point. The legal and equitable remedies available in a c. 214, § 1C, action are far broader than those available in a common-law tort action.

[8]See *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 463 (1997) ("equity jurisdiction has broad and flexible powers to fashion remedies").

volunteers performing services in a workplace. As a remedial statute, § 1C warrants a reading vindicating the Act's stated goal of prohibiting such sexual harassment for all persons — including volunteer workers. See *Sanitoy, Inc.* v. *Ilco Unican Corp.*, 413 Mass. 627, 632 (1992); *Buster* v. *George W. Moore, Inc.*, 438 Mass. 635, 645 (2003).

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*