## Commonwealth *vs.* Krista Contach.

No. 97-P-413.

Franklin. June 4, 1998. - July 9, 1999.

Present: Lenk, Gillerman, & Smith, JJ.

*Contempt. Practice, Criminal,* Contempt. *Abuse Prevention. Judge.*

Nothing in the record of proceedings in a District Court warranted the judge's adjudication of a party to be in criminal contempt, and there was no basis for imposing summary punishment. [251-252]

Adjudication of contempt in the Greenfield Division of the District Court Department by *Robert L. Howarth,* J., on October 11, 1996.

*Holly T. Smith* for the defendant.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

*Sandra J. Staub & William C. Newman,* for New England Learning Center for Women in Transition & another, amici curiae, submitted a brief.

Smith, J. On October 11, 1996, a District Court judge sitting in Greenfield adjudicated the defendant, Krista Contach, to be in criminal contempt and summarily punished her for what he considered to be her contemptuous conduct. The defendant appealed.

The undisputed facts are as follows. On October 11, 1996, the defendant filed a complaint in the Greenfield District Court, pursuant to G. L. c. 209A, requesting protection from abuse from her boyfriend, Brian Cornwell. She requested that the court issue an order against him, restraining him from, among other things, abusing her "by harming, threatening or attempting to harm [her] physically . . . ." The defendant alleged in an accompanying affidavit that Cornwell had been physically violent toward her during their three and one-half year relation-

ship, and that in July or August of 1996, he had beaten her so badly that she had to go to the hospital to be treated for her injuries. That beating resulted in the defendant filing a complaint for assault and battery.[1] After she filed the complaint, the defendant claimed that Cornwell became angry and threatened her; this occurred the week before she filed her request for the G. L. c. 209A restraining order.

The judge conducted a hearing at sidebar on the request for the c. 209A order at which both the defendant and Cornwell were present. The judge started to ask questions of the defendant about her request for a restraining order when he stopped and asked, "Did you have alcohol this morning?" The record shows that Cornwell answered, "No, I have not, sir." The defendant did not respond. The judge then resumed asking the defendant about her request.

In line with the affidavit that she filed, the defendant told the judge that Cornwell had hit her a few months before, had blackened her eye, and had subsequently made certain statements to mutual friends which the defendant interpreted to be a threat. The defendant told the judge that because of the threat she became afraid of imminent serious physical harm and left town. The judge asked Cornwell about the defendant's allegations. He denied ever hitting or threatening her.

The judge denied the defendant's request for a restraining order. He stated that, based on the defendant's testimony, he could not find that she had been placed in fear of imminent serious physical harm. The defendant then told the judge she was concerned that Cornwell might do something to her when she left the court room. The judge repeated that he was not going to issue the order.

After the matter concluded, the defendant started to leave the court room. As she did so, she raised the middle finger of her right hand into the air, making a gesture aimed at Cornwell which reasonably could have been considered to be obscene. The judge saw the gesture and said to the court officers, "Hey! Alright! Get her. Bring her here." The defendant apologized. The judge then stated, "Come here! Let me tell you right now

---

[1]The defendant's assault and battery complaint against Cornwell was scheduled to be heard that morning (October 11, 1996). There is a reference in the record, however, that the defendant had entered into an accord and satisfaction. In any event, the record does not disclose what happened to the defendant's complaint.

that is a contempt of court. I don't care who you were doing that to." The defendant repeated that she was sorry. Nevertheless, the judge ordered her to be placed in custody, stating that he "would deal with it later," and ordered that she be given a breathalyzer test.

A hearing was held at 2:45 P.M, that afternoon. The judge started the hearing by orally reciting facts upon which he based the adjudication of criminal contempt that he had made that morning.[2] He stated that it became obvious to him at the morning hearing on the defendant's request for restraining order that the defendant had consumed alcohol prior to the hearing. The judge stated that the defendant did not "make sense" at the hearing and did not give him "any reason to continue [*sic*] the restraining order." The judge then described the gesture that the defendant had made. He stated that "while [the gesture] maybe [was] not directed specifically at me, [it] was done in open view, in the courtroom, and was witnessed by anybody looking at that." The judge concluded his findings stating that the defendant's breathalyzer reading was .13, "which [told] me that her statement to me that she hadn't consumed any alcohol was not true." The judge then indicated that he would listen to defense counsel.

---

[2]The judge also made written findings .which he filed after the hearing. They are as follows:

"1. On October 11, 1996, the defendant Krista Contache [*sic*] appeared before me as the plaintiff in a restraining order.

"2. Upon approaching the side bar I noticed a strong smell of alcohol coming from her. I inquired as to whether she had been drinking and she replied 'no.'

"3. After listening to both parties on the restraining order I denied the order.

"4. While exiting the courtroom the defendant raised her right hand over her head and made an obscene gesture with her middle finger. The gesture was aimed at the other party in the restraining order, but witnessed by the entire courtroom.

"5. I ordered her into custody and ordered a breathalyzer exam. The results of that exam indicated a reading of .13 and [I] appointed the bar advocate Attorney Frederick Read to represent her.

"6. At 2:45 P.M. I held a hearing listing my reasons and after listening to Attorney Read and the defendant's apology to the court, I held her in contempt and order[ed] her to serve 10 days in the House of Correction."

Defense counsel conveyed to the judge the defendant's apology for the gesture and stated that, according to the defendant, Cornwell had made a similar gesture toward her first. Defense counsel also told the judge that the defendant apologized for coming to court after having consumed alcohol. Counsel explained that the defendant drank alcohol because "[s]he was nervous about coming to court . . . ." The judge interrupted and responded, "She didn't have to be here today." The defendant then spoke and apologized to the judge.

The judge informed the defendant that he was going to punish her for two offenses which he considered to be contemptuous: (1) making an obscene gesture and (2) appearing in court while under the influence of alcohol and then not telling him the truth about it. The defendant again apologized. The judge then sentenced the defendant to ten days in jail, the sentence to be served forthwith. The judge denied a stay of the sentence.

On appeal, the defendant claims that nothing she said or did warranted the judge's use of the summary contempt powers found in Mass.R.Crim.P. 43, 378 Mass. 919 (1979).[3] We agree with the defendant and hold that the circumstances did not constitute a proper occasion for the exercise of the summary contempt power.

Rule 43 of the Massachusetts Rules of Criminal Procedure provides:

> "(a) Availability of Summary Proceedings. A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

> "(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

> "(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

> "(3) the punishment imposed for each contempt does

---

[3]The judge did not cite any rule when he summarily punished the defendant. Both the defendant and the Commonwealth treat this case as a rule 43 matter. In any event, it is clear that the judge did not use the provisions of Mass.R. Crim.P. 44, 378 Mass. 920 (1979), which governs "[a]ll criminal contempts not adjudicated pursuant to rule 43."

not exceed three months imprisonment or a fine of five hundred dollars.

"(b) Nature of the Proceedings. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five · hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

"(c) Appeal. The contemnor's only right of appeal shall be to the Appeals Court."

"We observe first '[s]ummary punishment always, and rightly, is regarded with disfavor.' " *Commonwealth* v. *Corsetti*, 387 Mass. 1, 7 (1982), quoting from *Sacher* v. *United States*, 343 U.S. 1, 8 (1952). See *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 208 (1996) ("exercise of the summary contempt power . . . by long tradition is conceived narrowly and used with great restraint"). Moreover, "Rule 43 . . . permits the summary punishment of a criminal contempt only if 'summary punishment is necessary to maintain order in the courtroom' . . . ." *Commonwealth* v. *Segal*, 401 Mass. 95, 98-99 (1987).

There is nothing in the judge's findings or in the record that demonstrates that, as a result of the gesture, summary punishment was necessary to maintain or restore order in the court room.

Further, "[s]ummary contempt should be used only when the contemptuous behavior constitutes a threat that immediately imperils the administration of justice." *Commonwealth* v. *Corsetti, supra* at 8. In *Eaton* v. *Tulsa*, 415 U.S. 697 (1974), the petitioner, in response to a question on cross-examination, referred to his alleged assailant as "chicken shit." He was

convicted of criminal contempt. The Supreme Court reversed, ruling that "[t]his single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt," because "the use of the expletive [did not] 'constitute an imminent . . . threat to the administration of justice.' " *Id.* at 698, quoting from *Craig* v. *Harney,* 331 U.S. 367, 376 (1947).

The gesture in this matter was a single, isolated event, immediately followed by an apology to the court. It was not directed at the judge but rather at the person who the defendant claimed had beaten and threatened her. Clearly, it was nothing more than a short burst of temper — an emotion, we add, for which we have excused judges on various occasions when they have displayed it. See *Offutt* v. *United States,* 348 U.S. 11, 17 (1954); *Commonwealth* v. *Meadows,* 33 Mass. App. Ct. 534, 536 (1992).

There was no basis for the judge to adjudicate the defendant in criminal contempt because of the gesture, and certainly no grounds for summarily punishing her.

According to the judge's oral and written findings, he also summarily punished the defendant because she appeared in court after consuming liquor and lied to him about it. The record is unclear as to whom, Cornwell or the defendant, his question was directed. The record does show, however, that it was Cornwell who responded to the question and that the defendant said nothing. Because of her silence, the record does not support the judge's finding that the defendant lied to him about her consumption of alcohol.

The defendant did admit at the summary punishment hearing that she had consumed alcohol before coming to court. However, that fact alone did not justify summarily punishing her. The hearing on the defendant's request for a restraining order took place at sidebar. There was not even a hint of a threat to order in the court room from the defendant's consumption of alcohol. Therefore, that reason did not warrant the use of the summary contempt power.[4]

Overarching our conclusion that the judge's use of the sum-

---

[4]The judge's oral findings at the summary punishment hearing that, as a result of the defendant consuming alcohol, she did not make any sense and did not offer any reason for him to issue the restraining order, are not supported by the record. The defendant clearly answered the judge's questions and did indeed provide reasons for her request — Cornwell had beaten her in the past and threatened her.

mary contempt power was improper is his failure to consider the reason why the defendant was in court in the first place.

The defendant came to court seeking a restraining order pursuant to G. L. c. 209A. That statute, entitled "Abuse Prevention," has been described as a "statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse." *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990).

Obviously, individuals who come to court seeking protection from further abuse have often been physically battered and are emotionally bruised. They are under considerable stress because by the very nature of the process they are required to reveal to strangers details of intimate relationships that have disintegrated into violence and, indeed, even hatred. Further, volatile situations may be created where, as here, the reasons for the order are given in the presence of the alleged abuser.

For that reason, the Chief Administrative Justice of the Trial Court has drafted guidelines for judges and other court personnel in dealing with various situations that might arise at such proceedings. See Guidelines for Judicial Practice: Abuse Prevention Proceedings (1997).

The commentary to guideline 1:01 is particularly relevant to this matter. It states:

> "Judges . . . and other court personnel should be aware that these proceedings often take place in times of great turmoil in the parties' lives. Both plaintiffs and defendants . . . may display emotions infrequently observed in a courtroom. While overt disrespect for the court should not be tolerated, some sensitivity is called for."

In view of the circumstances, before adjudicating the defendant in criminal contempt, the judge should have displayed more sensitivity to the situation before him.[5] We trust that in the future, if a similar situation arises, he will view it with more restraint and compassion than he showed this defendant.

Finally, we realize that it is of great importance that civility

---

[5]The judge had other options that he could have employed, rather than using summary punishment. He could have excused the gesture and warned the defendant not to repeat it. He could have scolded her and let her go on her way. He could even have asked the probation department to assist her if she had a problem with alcohol. Finally, he could have employed Mass.R.Crim.P. 44 which has more procedural safeguards.

and good order be maintained in the court room. This opinion should not be read as giving license for the display of obscene gestures in court rooms or to allow persons to appear in court after consuming alcohol. There may be situations where summary punishment is properly involved. That situation was not present here.

> *Judgment reversed.*
>
> *Finding set aside.*
>
> *Judgment shall enter for the defendant.*