## Susan B. Jones *vs.* Joseph W. Gallagher.

No. 99-P-2052.

Middlesex. January 17, 2002. - May 29, 2002.

Present: Porada, Doerfer, & Mills, JJ.

*Abuse Prevention. Protective Order.*

Discussion of the statutory background of G. L. c. 209A, the abuse prevention statute. [886-888]

Statement of the criterion for making permanent an order entered pursuant to G. L. c. 209A, the abuse prevention statute, namely, a showing of continued need for the order. [888-889]

Discussion of the entitlement of a complainant to a permanent order entered pursuant to G. L. c. 209A, the abuse prevention statute, after the entry of a temporary order, and the burden of proof at a proceeding seeking a permanent order. [889-890]

Where a judge hearing a request to make permanent a temporary order entered pursuant to G. L. c. 209A, the abuse prevention statute, may have acted upon a presumption that the complainant was entitled to have a one-year, after-notice order made permanent, absent the defendant being able to prove "extraordinary circumstances" to persuade the court otherwise, the judge apparently inappropriately used the existence of the earlier order, issued by a different judge, at a different time, as the sole basis for making the order permanent; therefore, this court vacated the permanent abuse prevention order. [890]

Civil action commenced in the Concord Division of the District Court Department on August 6, 1998.

A motion for an abuse prevention order was heard by *Stephen S. Ostrach,* J., and a motion to extend the abuse prevention order was heard by *Paul L. McGill,* J.

*Charles Allan Hope (John H. Cunha, Jr.,* with him) for the defendant.

*Aderonke O. Lipede* for the plaintiff.

Mills, J. At the time their personal relationship ended, the complainant Jones and defendant Gallagher were coworkers in a school system. After their break-up, Gallagher authored a

poem with some violent imagery that expressed his emotional upheaval.[1] The poem (which appears as an Appendix to this opinion) came into Jones's possession and she, expressing fear for her safety, requested an ex parte abuse prevention order pursuant to G. L. c. 209A against Gallagher on August 6, 1998. Following a hearing, a one-year abuse prevention order was entered by a District Court judge on September 24, 1998, and upon its expiration, on September 23, 1999, a second judge entered a permanent order against Gallagher, from which he now appeals. He claims that the second judge erroneously placed the burden of proof on him and that the evidence was insufficient to make the order permanent.

1. *Background.* The 1998 order was published on the standard form entitled "Abuse Prevention Order." Findings were recorded by checking off the boxes that correspond to the pre-printed text. Gallagher was ordered "not to abuse the plaintiff," "not to contact the plaintiff," and to "stay away from the plaintiff's residence" and workplace. The box reciting "[t]here is a substantial likelihood of immediate danger of abuse" was also checked. The order notified the defendant that "[v]iolation of this order is a criminal offense punishable by imprisonment or fine or both." The order recites an expiration date, as well as the "next hearing date," of September 23, 1999.

On that date, Gallagher, his counsel, and Jones were present. The proceeding was brief and informal.[2] At the proceeding, the judge remarked that "[t]here have been extensive hearings apparently on this matter in which exhibits and testimony were taken," and then asked, "How have things been since the order went into effect?" Jones replied, "OK," and upon the judge's inquiry, stated, "I'd like to have the order made permanent." There was no other proof or offer of proof. The judge then invited Gallagher's attorney to speak, whereupon counsel recited that the parties had experienced a personal relationship that

---

[1]The poem was apparently written immediately after Jones and Gallagher broke off their personal relationship, but was never sent directly to Jones. It was however, sent as an attachment to a letter from Gallagher to a mutual acquaintance of the parties.

[2]The Legislature intended that domestic abuse prevention order proceedings be as expeditious and informal as reasonably possible. *Zullo* v. *Goguen,* 423 Mass. 679, 681 (1996).

started "when they both were married," and lasted for approximately two and one-half years. The relationship ended one and one-half years before the initial order was granted, and the order had been issued on the basis of a poem "that Mr. Gallagher had written about his own pain [using] imagery that was violent in terms of his own pain . . . ." Gallagher's attorney further reported that there had been no physical contact between the parties for two and one-half years, that they no longer worked together, and that they did not live anywhere near each other. These representations were not contradicted.

The judge appears then to have examined the original file; however, the record does not disclose exactly what he reviewed. He subsequently explained his understanding of the law "in case there is an appellate issue," noting that "if there is a hearing and the Judge makes a finding that [the plaintiff] was in need of protection and there was a sufficient basis for issuing that order, at the end of the year, [the plaintiff] has a right to request that the order be made permanent and . . . the fact that no abuse occurred during that period of time is not enough to dismiss or vacate the order." The judge made no comment as to the order of proof or burden of proof.

The judge initiated a theoretical discussion with Gallagher's attorney concerning the notions of reconsideration, reopening the order, and vacating the expiring order, which counsel indicated were not appropriate to the circumstances. The judge then stated, "I'm suggesting absent extraordinary conditions, the statute says [the plaintiff] is entitled to have [the order] made permanent or continued." The judge then asked Jones, "Do you feel you are in need of protection, and if so, why?" To this she replied,

> "Absolutely . . . I feel that I am in imminent fear. I am in fear of imminent physical and psychological harm. . . . First of all, the decision that was made last year was made . . . [and] it was the law that came in and protected me for the last year in which time I haven't heard from him. I now face renewal where it's going to end and I won't have that protection there. I've been in fear of this day coming when I don't have the law there to protect me. I also have a case at the Mass[achusetts] Commission

> Against Discrimination [MCAD] pending, and we will
> have contact again in the future and I need that protection
> there for me."

After a brief comment by Gallagher's attorney concerning
Jones's pending case (apparently to be litigated in the Superior
Court), he asked the judge, "what is the reasonableness of her
current statement that she is in fear. Why is she in fear of im-
minent bodily harm?" Gallagher's attorney also suggested that
the order be extended until the end of the MCAD litigation. The
judge, nevertheless, entered a permanent order and stated the
following, in part:

> "The basis for that in case you want to have something
> on record to appeal is that I find that there is ongoing
> litigation matters between the two of them that stem from
> the original time, apparently when they were both working
> at the same location. That they have now separated that
> litigation apparently it is going into the Superior Court and
> she is in reasonable fear based on what [the issuing judge]
> apparently found in the past."

2. *Statutory background.* Chapter 209A was inserted in the
General Laws in 1978. St. 1978, c. 447, § 2. "That statute,
entitled 'Abuse Prevention,' has been described as a 'statutory
mechanism by which victims of family or household abuse can
enlist the aid of the State to prevent further abuse.' " *Com-
monwealth* v. *Contach*, 47 Mass. App. Ct. 247, 253 (1999),
quoting from *Commonwealth* v. *Gordon*, 407 Mass. 340, 344
(1990). The statute was enacted "to address the problem of
domestic violence through the provision of judicial remedies,"
*Turner* v. *Lewis*, 434 Mass. 331, 332 (2001), and the "c. 209A
proceeding is a civil, and not a criminal, proceeding." *Frizado*
v. *Frizado*, 420 Mass. 592, 596 n.3 (1995). Some orders,
however, issued pursuant to the statute contain criminal
penalties. See *Commonwealth* v. *Finase*, 435 Mass. 310, 312-
314 (2001). The "[v]iolence brought on by, or exacerbated by,
familial relationships was the 'mischief or imperfection to be
remedied' by c. 209A." *Turner* v. *Lewis*, *supra* at 334, quoting
from *Adoption of Derrick*, 415 Mass. 439, 444 (1993). The
statute attempts to balance sensitive issues, and often brutal
aspects, of fundamental human relationships.

The person suffering from abuse may commence a proceeding by filing a complaint, G. L. c. 209A, § 3, and those "proceedings often take place in times of great turmoil in the parties' lives." Commentary to § 1:01 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (2000). "They are under considerable stress because by the very nature of the process they are required to reveal to strangers details of intimate relationships that have disintegrated into violence and, indeed, even hatred." *Commonwealth* v. *Contach, supra.* Consequences of the underlying situation, notwithstanding any order, tragically and too frequently include the most serious violence and sometimes death of the complainant. See *Commonwealth* v. *Johnson,* 429 Mass. 745, 746 (1999) (defendant convicted of first degree murder and violating abuse prevention order under G. L. c. 209A, § 7); *Commonwealth* v. *Bianchi,* 435 Mass. 316, 317 (2001) (same).

In comparison, consequences to the defendant may appear to be much less severe, but they too are negative. Issuance of an order effects entry of that order in the Commonwealth's criminal records system, and the order can have an adverse effect upon the defendant in any future c. 209A proceeding and in certain future bail proceedings.[3] *Wooldridge* v. *Hickey,* 45 Mass. App. Ct. 637, 638 (1998). The order can also create criminal jeopardy specific to the defendant and subject him or her to arrest without a warrant. See *Richardson* v. *Boston,* 53 Mass. App. Ct. 201, 203 (2001). "The judicial imprimatur on the 209A order lends it significant weight. This is not just a filing in court but a determination by the court." *Commonwealth* v. *Foreman,* 52 Mass. App. Ct. 510, 515 (2001).[4]

The Legislature intended the c. 209A judicial process to be as

---

[3]General Laws c. 276, § 57, as amended by St. 1992, c. 201, § 2, limits the persons authorized to admit to bail those arrested and charged with a c. 209A offense, effectively eliminating bail commissioners and clerk magistrates, and requiring that any such bail requirement be determined by a judge.

[4]It is also important to note that the c. 209A process may be used abusively by litigants for purposes of discovery and harassment, and that it may make other family circumstances (especially involving the parties' children) and relationships substantially more complicated. See *Commonwealth* v. *Silva,* 431 Mass. 194, 198 (2000); *Fabre* v. *Walton,* 436 Mass. 517, 519 (2002); *Wooldridge* v. *Hickey,* 45 Mass. App. Ct. at 637; *Commonwealth* v. *Leger,* 52 Mass. App. Ct. 232, 235 (2001); *Commonwealth* v. *Stewart,* 52 Mass. App. Ct. 755,

"expeditious and as comfortable as it reasonably can be for a lay person to pursue." *Frizado* v. *Frizado*, 420 Mass. at 598.[5] And, with great respect, we note that "[j]udges often must deal with large numbers of these emotional matters in busy court sessions." *Ibid.* "A judge must consider carefully whether serious physical harm is imminent and should not issue a G. L. c. 209A order simply because it seems to be a good idea or because it will not cause the defendant any real inconvenience." *Smith* v. *Joyce*, 421 Mass. 520, 523 n.1 (1995). Judges have been instructed to be especially sensitive, and to examine such cases with restraint and compassion, see *Commonwealth* v. *Contach*, 47 Mass. App. Ct. at 253, "in the context of the entire history of the parties' hostile relationship." *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 930 (1999). In the light of these ponderous, demanding, somewhat conflicting, and complicated circumstances, many of which are beneath the surface of complex lives, we state our understanding of the judicial inquiry and procedure upon a complainant's request that a c. 209A order be made permanent.

3. *Evidence of abuse.* For purposes of obtaining a protective order under G. L. c. 209A, abuse is defined as "(a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1. "Generalized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress from vexing but nonphysical intercourse, when there is no threat of imminent serious physical harm, does not rise to the level of fear of imminent serious physical harm. . . . The judge must focus on whether serious physical harm is imminent and should not issue a c. 209A order on the theory that it will do no harm

762 (2001); *Uttaro* v. *Uttaro*, *ante* 871, 874-875 (2002). While such abuses appear infrequently, they damage a process which, in the great majority of instances, performs essential service to victims of domestic violence. We note that the motives and interests in c. 209A proceedings are as diverse as the human condition of personal relationships.

[5]It has been recognized that trial judges can be sensitive to the difficulties of pro se litigants, and although some leniency is appropriate in determining whether a pro se litigant meets the requirements of procedural rules, the rules bind pro se litigants as they bind other litigants. *Mmoe* v. *Commonwealth*, 393 Mass. 617, 620 (1985); *Mains* v. *Commonwealth*, 433 Mass. 30, 35 (2000).

. . . ." *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. at 639. We have made no distinction in this regard between an initial (after-notice) order and a permanent order. "Abuse" has the same definition in either context. "The only criterion for extending the original order is a showing of continued need for the order." *Pike* v. *Maguire*, *supra* at 929.

4. *Permanent order.* In 1990, the Legislature rewrote the statute, see St. 1990, c. 403, § 3, adding language that expressly grants the judge discretionary authority to "enter a permanent order" at the renewal hearing, generally, the date set in the original order when "the order is to expire" and "the matter will again be heard." G. L. c. 209A, § 3.[6] See *Crenshaw* v. *Macklin*, 430 Mass. 633, 634-635 (2000). General Laws c. 209A, § 3, mandates that initial relief be granted for a fixed period of time, not to exceed a year, and that the order state on its face the date and time that the order is to "expire" and the matter will again be "heard." Upon that date, if the plaintiff appears, the court is directed to "determine" whether to extend or make permanent the order. Without further action by the court, the Legislature has directed that the order expire. There is no presumption that the order be continued. There is no entitlement that the order be made permanent. The order expires unless extended after a judicial determination, essentially, a new finding, that the plaintiff continues to require protection from "abuse" as explicitly defined in c. 209A, § 1 — in this case, requiring a finding that a permanent order is, in fact, what is reasonably necessary to protect Jones from being placed "in fear of imminent serious physical harm" by Gallagher. See

---

[6]General Laws c. 209A, § 3, provides the following in relevant part: "Any relief granted by the court shall be for a fixed period of time not to exceed one year. Every order shall on its face state the time and date the order is to expire and shall include the date and time that the matter will again be heard. If the plaintiff appears at the court at the date and time the order is to expire, the court shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff or to enter a permanent order. . . . The court may also extend the order upon motion of the plaintiff, for such additional time as it deems necessary to protect from abuse the plaintiff or any child in the plaintiff's care or custody. The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order, of allowing an order to expire or be vacated, or for refusing to issue a new order."

*Commonwealth* v. *Molloy*, 44 Mass. App. Ct. 306, 309 (1998) ("extension of an annual order pursuant to § 3 . . . is . . . by no means automatic"); *Pike* v. *Maguire*, 47 Mass. App. Ct. at 929-930.

There is no burden on a defendant to testify or present evidence. "The burden is on the complainant to establish facts justifying the . . . continuance of an abuse prevention order. . . . The plaintiff must make the case for the awarding of relief." *Frizado* v. *Frizado*, 420 Mass. at 596. "Although it is not expressly stated in G. L. c. 209A, . . . [the] plaintiff must make a case for relief by a preponderance of the evidence." *Id.* at 597. See *Smith* v. *Joyce*, 421 Mass. at 522.

5. *Evidentiary use of initial order and record.* The mere fact that a c. 209A order issued in the past, standing alone, is not enough for a judge to conclude, on a request for renewal, that "additional time [is] reasonably necessary to protect the plaintiff." G. L. c. 209A, § 3. From the record in this case, we are concerned that the judge may have acted upon a presumption that a complainant is entitled to have a one-year, after-notice order made permanent, absent the defendant being able to prove "extraordinary conditions" to persuade the court otherwise. It appears that in making the order permanent the judge inappropriately used the mere existence of the earlier order, issued by a different judge, at a different time, as the sole basis for making the order permanent.

The permanent abuse prevention order is therefore vacated.

.       *So ordered.*

APPENDIX.

*Sue Me*

To tear out your own heart with bloody
jagged teeth, you must first bite through

the breast plate, then the breast bone, past
several sore, cracked and bruised ribs.

You seize it between upper and lower incisors
drag it, broken but still beating into

the fresh horrors of a new day. The sun shines,
the clock ticks, the day stretches and yawns

before you. You wonder why you just don't die.
What tenuous connection keeps you still breathing.

Everything you loved and believed lies torn and twisted.
All thorns without the rose, bleeding and broken

another casual victim, no bandage can resuscitate.
Details at eleven, see obit. section, page 68.

The heart dies, but the body lives on —
"Miracle of science," reports the National Enquirer.

Inquiring minds don't want to know
what fucked up fate might befall them.

Instead, pretend that unendurable pain is sort
of fascinating, like twenty-two pound twins

delivered by menopausal grandmother,
or how scientific proof of heaven's existence

or is it hell's, lies just past the next galaxy.
Take it for granted — pictures on page 63.

It's the way of the world, no thought, no word,
no deed, need apply not necessary, not applicable.

Not to worry, have a nice day, life goes on
don't try to understand, go with the flow.

Life is a bumper sticker, a buzz word, life is a cabaret.
Life is a bitch, a bowl of cherries, a ten second sound bite.

Use every available cliché to arm yourself against
any glimmer of self-awareness, comprehension or culpability.

Everything else is to blame except you or me. It's them,
they, those, others, always, all ways, Not us.

We did all we could. We did what we had to do.
We played the hand that was dealt us. We did

the best that we could. We did all that we could do.
We did everything that was humanly possible. We

went above and beyond what could be expected. We
put ourselves out, extended ourselves in extraordinary fashion.

We coped, hoped, discussed, dialoged, forgave,
forgot, taught, listened, learned, lectured

helped, hurt, healed, supported, sacrificed,
shared, screamed, dreamed, danced, denied,

delighted, desecrated and destroyed. What memories,
what stories we'll have to tell. Not to each other

of course, but to ourselves, not lonely of course, but alone.
In place of love and laughter the light of eternity or earth.

We'll have loss and regrets, but we'll remain reasonable.
We'll recognize the road too rocky, the cost too great.

And we're practical people, civilized, survivors.
We'll master the art of living as if it still mattered.

You'll collect original haiku from the 5th century Tang
dynasty reminding you of a poet you vaguely remember.

I'll hoard exquisite examples of calligraphy Pre-Raphaelite
period, lovely letters, like dancer's limbs

motionless without music, evocative, reminding me of some
thing I can't quite place, a faint silhouette of a familiar face.