CHRISTINE CORRADO vs. HUNT R. HEDRICK, JR., & another.[1]

No. 05-P-287.

Middlesex. December 12, 2005. - January 31, 2006.

Present: GRASSO, DREBEN, & BERRY, JJ.

*Abuse Prevention. Protective Order. Statute,* Construction.

This court concluded that a judge properly entered certain ex parte abuse
prevention orders against the defendants (the plaintiff's fiancé and his son)
under G. L. c. 209A, based on the plaintiff's affidavits establishing that
each had caused her physical harm or had placed her in fear of imminent
serious physical harm [481-483]; however, at a subsequent contested hear-
ing where the plaintiff failed to prove that "abuse" had occurred, the judge
could not continue the ex parte order that directed the fiancé to vacate and
remain away from the household because of the judge's subjective concerns
that violence might occur if the fiancé and the plaintiff remained in the
same household [483-486].

CIVIL ACTIONS commenced in the Framingham Division of the
District Court Department on August 20, 2004.

Motions for abuse prevention orders were heard by *Paul F.
Healy, Jr.,* J., and motions to dismiss the orders were heard by
*Douglas W. Stoddart,* J.

*Steven S. Epstein* for the defendants.
*Dana Alan Curhan* for the plaintiff.

GRASSO, J. In this appeal, we consider the constraints on a
judge's power to award relief under G. L. c. 209A. We conclude
that when, at a contested hearing, a plaintiff fails to prove that
"abuse" has occurred, a judge may not continue an ex parte
order that directs the defendant to vacate and remain away from
the household because of subjective concerns that violence may
occur if both remain in the same household.[2]

[1]Hunt R. Hedrick, III.
[2]As discussed infra, the ex parte orders were proper.

1. *The ex parte orders.* On Friday, August 20, 2004, Christine Corrado filed complaints for protection under G. L. c. 209A, with accompanying affidavits, that sought abuse prevention orders against her fiancé, Hunt R. Hedrick Jr. (Randy), and his twenty year old son, Hunt R. Hedrick III (Hunt III). In her affidavit against Randy, Corrado alleged that he hit her on two occasions and threw her into a refrigerator; told her he would bury her in the backyard if she left him; had a large collection of guns in the house; was a heavy marijuana user; and was under substantial stress because of the failing health of his parents, who lived in Virginia. Corrado also related that she and Randy were involved in a dispute over ownership of the home at 12 DiCarlo Road, Hopkinton. The home was in Randy's name, but she had invested substantial sums. Corrado had been staying at her parents' home in Framingham in order to avoid Randy and Hunt III, who were returning from Virginia to attend Hunt III's court date. Randy told her not to return to DiCarlo Road and to send someone to retrieve her belongings.

As to Hunt III, Corrado's affidavits alleged that he was a drug dealer and user who was on probation; maintained drug paraphernalia and caused other problems in the home; had threatened to kill her and her daughter in the recent past; and had cut his father with a knife. Corrado also described his assaultive behavior, his use of knives with peers, his knowledge of his father's guns, and her fear of living with him during Randy's frequent travels to Virginia.

After an ex parte hearing, a District Court judge granted restraining orders that directed Randy and Hunt III, respectively, to refrain from abuse; not to contact Corrado or her fourteen year old daughter Lalia and to remain at least fifty yards away from them; to surrender all firearms; and, significant to this appeal, to leave and remain away from the residence at 12 DiCarlo Road.

2. *The evidentiary hearing.* The matters first came on for hearing on October 5, 2004. Randy appeared with counsel, who moved to dismiss the orders nunc pro tunc to August 20. A different judge heard testimony from Corrado, Lalia, and Randy, and allowed Randy's counsel limited cross-examination. Various electronic messages and notes detailing telephone calls

between Corrado and Randy during the months of May through September were admitted in evidence as exhibits.

Corrado testified that she and Randy had "very large financial issue[s]" regarding the property at 12 DiCarlo Road. They had communicated by phone while Randy was en route from Virginia. Randy told her that she was not to come back to the house and that he planned to change the locks on the door. Corrado had no objection to telephone contact to save on attorneys' fees, but she objected to Hunt III remaining in the home. In the past, she had overheard him tell his father that he would kill her. Lalia testified that Randy had used crude words toward Corrado, but "[n]ot like I'll kill you, . . . just . . . crude words."

Randy denied ever threatening Corrado or being physically abusive to her. He confirmed that he and Corrado were locked in a dispute over her financial interest in the property and that in July he told her that she had thirty days to find a place to live and to vacate the property. They had scheduled a mediation session for August 19 to resolve their financial dispute, but Corrado had sabotaged the mediation by misleading her as to its scheduled time and place. On the advice of his lawyer, Randy changed the locks to the property on August 19 and contacted the Hopkinton police to have a "no trespass" order issued against Corrado. On August 20, he and Corrado discussed settlement, but she rejected his offer to pay her $146,500 for her interest or to let her buy his interest for $50,000. Her response was, "I'll see you in court and I'm going to make your life miserable." Corrado then obtained the restraining order against him.

Randy also testified that Corrado had a volatile temper. She would yell, scream, stomp around, slam doors, and throw things, including liquids in his face. He stated that the incident involving the refrigerator, referenced in Corrado's affidavit, had actually occurred a year prior. According to his testimony, in the course of an argument Corrado threw a beer bottle at him. He laughed at her, causing her to become even more irritated. As he went to get a towel to clean up the beer, Corrado hit him in the testicles with the beer bottle. When he "instinctively [and]

impulsively" pushed her away from him, she "stumbled and fell into the refrigerator."

After considering the testimony, the judge told Corrado that he found Randy's version of events more credible than hers, and that "[l]egally I don't feel that you have proven your case."[3] He told the parties that he intended to vacate the orders and sought their input for resolving the stalemate over the right to immediate occupancy of the property. When the parties failed to reach a resolution, the judge stated that he would vacate all protective orders except those that directed Randy (and Hunt III) to remain away from the premises and authorized them to retrieve their personal belongings in the company of the police. The judge expressed his intention to leave those orders in place for a week to allow the parties to resolve the dispute.

Before continuing the hearing, the judge reiterated to Corrado that she had not proved that Randy had physically abused her or threatened her with imminent serious physical harm. He told her that he believed that she had come to court solely to gain leverage in their ongoing property dispute. Nevertheless, the judge stated that he would extend the order that Randy and Hunt III remain away from the property for a week because of his concerns that a vacuum regarding the right to use and occupy the premises could lead to an explosive situation should both sides sit in the house and refuse to leave.

On October 12, Corrado appeared with her attorney. Counsel appeared for Randy and Hunt III, who were back in Virginia. The attorneys reported that the parties had made no headway regarding the property dispute. With respect to Corrado's allegations against Randy, the judge restated his prior determination that Corrado had failed to meet her burden of proof against Randy and had sought a restraining order not out of fear for her safety but as a leverage in the property dispute. Although the judge recognized that maintaining the order to vacate in place

---

[3]The judge went on to say, "Legally I want to vacate the order. Practically, I'm going to give you some time to do something legally to decide who can stay [inaudible] night. I don't want to use this process to give one or the other person occupancy. Now, the problem is, if I do nothing, it could end up being a lawless, chaotic circumstance where both sides are sitting in the house refusing to leave and that could be explosive. So I'm really in a lot of trouble here, unless I extend this for a short period of time."

was of dubious legal validity, he again extended the order directing Randy to vacate and remain away from the property until October 20 in the hope that by that date the parties could reach an amicable civil settlement. With respect to Corrado's allegations against Hunt III, the judge reconsidered his previous determination that Hunt III did not pose a danger. The judge reinstated against Hunt III the previously vacated orders that Hunt III refrain from abusing and have no contact with Corrado.

On October 20, the judge learned that the property dispute remained unresolved. At a loss for a practical solution, the judge again extended the order directing Randy to remain away from the premises until January 4, 2005.[4] The judge acknowledged candidly that the order "is as marginal an order as I have ever written. And the only reason I would extend it is I am scared to death of these two people sitting in the same house. It is untenable, and I don't know of any legal means other than extending this order."[5] The order has since expired.[6]

3. *Discussion.* General Laws c. 209A "provides a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse." *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990). The statute was enacted "to address the problem of domestic violence through the provision of judicial remedies." *Turner* v. *Lewis*,

---

[4]The judge also stated: "The biggest fear of any Judge is that he vacates an order and physical violence occurs after the vacature of that order . . . . [M]y nightmare is that I vacate the order and that [Randy] returns to the house. Mr[s]. Corrado stays in the house. They could stay there for days or weeks. It's obvious they can't stand each other. It's obvious that the level of the rhetoric to one another is at a heightened state.

"Although there is no belief on my part that other than being inside the house, that [Randy] would do any harm to her. I just can't put them in the same room for extended days or weeks."

[5]At the prodding of counsel for Randy, the judge included in the order a provision that Corrado convert all utilities to her name, immediately assume certain mortgage and tax obligations, and provide proof of payment to opposing counsel.

[6]The matter is not moot. See *Smith* v. *Joyce*, 421 Mass. 520, 521 (1995) (statute requires appropriate law enforcement agency to destroy record of vacated orders); *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638 (1998) (defendant has surviving interest in establishing order not lawfully issued to remove stigma from his name and record and collateral use in future proceedings); *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 887 (2002); *Dollan* v. *Dollan*, 55 Mass. App. Ct. 905, 905 n.2 (2002).

434 Mass. 331, 332 (2001). "The fundamental purpose of proceedings under c. 209A is to adjudicate the need for protection from abuse and, if that need is found to exist, to provide protective court orders." Guidelines for Judicial Practice: Abuse Prevention Proceedings § 1:01 (Dec. 2000).

The statute provides a potent arsenal of remedies that "requires great sensitivity for the suffering and, sometimes, mortal danger that flow from domestic violence," *Szymkowski* v. *Szymkowski*, 57 Mass. App. Ct. 284, 286 (2003), as well as alertness "against allowing the process to be used, as it sometimes is, 'abusively by litigants for purposes of . . . harassment.' " *Id.* at 287, quoting from *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 887 n.4 (2002). The statute is not a panacea for all social ills, nor a means of circumventing other available judicial processes for resolving disputes. See G. L. c. 209A, § 3, as amended through St. 1990, c. 403, § 3 ("No order under this chapter shall in any manner affect title to real property").

Section 3 of c. 209A, as amended through St. 1990, c. 403, § 3, provides that " '[a] person suffering from abuse from an adult or minor family or household member may' obtain a protective order against a defendant who has perpetrated such abuse." *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 484 (2005). As pertinent to this action, § 1 of c. 209A, as amended through St. 1990, c. 403, § 2, defines "abuse" as:

> "[T]he occurrence of one or more of the following acts between family or household members:
>
> "(a) attempting to cause or causing physical harm;
>
> "(b) placing another in fear of imminent serious physical harm."[7]

As a predicate to the issuance of a protective order, the statute requires a determination that the defendant has perpetrated "abuse" within the meaning of the statute. Put differently, a sine qua non for the issuance of a statutory protective order is a finding of abuse. Upon a finding of abuse, a court may issue

[7]Corrado made no allegation that either defendant engaged in "abuse" by "causing [her] to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1, as amended through St. 1990, c. 403, § 2.

protective orders. See G. L. c. 209A, § 3. Absent such a finding, the remedies of § 3 are not available.

We now turn to the ex parte orders of August 20 and the orders that followed the hearing of October 5. We conclude that the judge did not err in entering the August 20 ex parte orders against Randy and Hunt III (or in extending these orders pending full hearing). Notwithstanding the defendants' arguments to the contrary, it is beyond dispute that the ex parte orders entered on sufficient basis. Corrado, Randy, and Hunt III fell within the ambit of "household members" as that term is defined in the statute, and the court had jurisdiction to entertain Corrado's ex parte complaint against each of them. See G. L. c. 209A, § 1; *Sorgman* v. *Sorgman*, 49 Mass. App. Ct. 416, 417 (2000). Corrado and Randy were in a substantive dating relationship and resided together at 12 DiCarlo Road. Hunt III also resided at that location. Besides satisfying the jurisdictional "relationship" requirement, Corrado's affidavits established a sufficient factual basis for the judge's conclusion that Randy and Hunt III, respectively, had caused her physical harm or placed her in fear of imminent serious physical harm, thereby warranting ex parte relief.

The orders that followed the evidentiary hearing of October 5 stand on different footing. That hearing was a civil proceeding at which Corrado had the burden of demonstrating by a preponderance of the evidence that each defendant's actions either caused her physical harm or placed her in fear of imminent serious physical harm. See *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995); *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 890; *Keene* v. *Gangi*, 60 Mass. App. Ct. 667, 669-670 (2004); *Vittone* v. *Clairmont*, 64 Mass. App. Ct. at 481 n.4. The judge's findings manifest that Corrado failed in her burden of proving that Randy had perpetrated "abuse" on her.

The judge expressed unambiguously his disbelief of Corrado's allegations that Randy had caused her physical harm or placed her in fear of imminent serious physical harm. The judge specifically concluded that Randy's version was more credible than Corrado's and that she had come to court seeking c. 209A

protection as a wedge in her property dispute with Randy.[8] See *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 887 n.4, and cases cited therein (recognizing that litigants may abuse the c. 209A process for purposes of harassment); *Szymkowski* v. *Szymkowski*, 57 Mass. App. Ct. at 287. Findings that are based on credibility assessments are uniquely the province of the trial judge, and we will not disturb them on appeal. See *Commonwealth* v. *Boucher*, 438 Mass. 274, 275-276 (2002); *C.O.* v. *M.M.*, 442 Mass. 648, 655-656 (2004).

Once the judge concluded that Corrado had failed in her burden of proof, he erred in extending the order that directed Randy to vacate and remain away from 12 DiCarlo Road. Before the available remedies for dealing with domestic abuse may be invoked, "abuse" must be proved. Indeed, to remedy the problems of domestic abuse, the Legislature has seen fit to permit the District Court, and other courts that are not courts of general equity jurisdiction, the power to issue equitable orders in instances where abuse is found. See *Zullo* v. *Goguen*, 423 Mass. 679, 682 (1996) ("orders made under c. 209A are equitable in nature"). Absent proof of abuse, the judge lacked authority to impose the equitable remedies available under the statute.

To his credit, the judge did not rubber stamp Corrado's complaint. As the law requires, he considered all the evidence conscientiously, made a discerning appraisal, and concluded that she had failed in her burden of proof. See *Frizado* v. *Frizado*, 420 Mass. at 597. While the judge recognized that Corrado's failure to prove abuse imposed constraints on the remedial powers available, he feared that removing the order that directed Randy to remain away from the residence would create a vacuum that left each party free to return to the residence, where their dislike for each other would pose a potentially explosive situation. In utilizing the remedies of c. 209A to alleviate this concern, the judge erred. See *Uttaro* v. *Uttaro*, 54 Mass. App. Ct. 871, 874-875 (2002) (abuse prevention order permissible only if predicate conditions shown and not as prophylactic against putative violations).

---

[8]We find no abuse of discretion or other error of law and leave undisturbed the judge's determination on October 12, upon reconsideration, that Hunt III posed a threat of imminent serious physical harm and that there existed a basis for issuing protective orders against him.

As observed in *Vittone* v. *Clairmont,* 64 Mass. App. Ct. at 486:

> "A restraining order is not to be issued 'simply because it seems to be a good idea or because it will not cause the defendant any real inconvenience.' *Smith* v. *Joyce,* 421 Mass. 520, 523 n.1 (1995). There must be more than '[g]eneralized apprehension, nervousness, feeling aggravated or hassled,' *Wooldridge* v. *Hickey,* 45 Mass. App. Ct. [637, 639 (1998)], because what is of 'central importance' is the 'fear of imminent serious physical harm.' *Id.* at 641. The applicant's fear must be more than 'subjective and unspecified'; viewed objectively, the question is 'whether the plaintiff's apprehension that force may be used is reasonable.' *Carroll* v. *Kartell,* 56 Mass. App. Ct. [83,] 86-87 [2002]."

Here, the judge did not believe that Randy had physically abused Corrado or posed a threat of imminent serious physical harm to her. In these circumstances, the judge's concern about what might occur were both parties free to return to the home unfettered by an order was no different from the "[g]eneralized apprehension" of abuse that the courts have refused to recognize as abuse under c. 209A. *Wooldridge* v. *Hickey, supra. Uttaro* v. *Uttaro,* 54 Mass. App. Ct. at 874. *Keene* v. *Gangi,* 60 Mass. App. Ct. at 670-671. Indeed, the judge's concern reflected as much generalized fear of what Corrado might do to Randy as of what Randy might do to her. Having concluded that Randy had not physically abused or attempted to abuse Corrado in the past and did not pose an imminent threat of serious physical harm, there was no objective basis for concluding that abuse had been shown, and the judge lacked the power to impose a protective order as a prudential measure.

We do not underestimate the practical difficulty that faced the judge or the impulse to continue the order to vacate as insurance against the possibility of abuse. However, maintaining in place an abuse prevention order under c. 209A is not a permissible remedy when abuse has not been proved. While the judge was powerless to impose a statutory remedy, other avenues of judicial process remained available to effectuate peaceful resolution of the parties' apparently intractable impasse, such as an equity action in the Superior Court or a summary process action.

In sum, the abuse prevention orders issued against Hunt III are affirmed, as is the initial ex parte order against Randy. The subsequent abuse prevention orders issued against Randy are vacated. The District Court judge shall cause a direction to be sent, conformably to the provision of G. L. c. 209A, § 7, third par., for the destruction of all records of the vacated orders. See *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 155-159 (1997).

*So ordered.*